286 So.2d 371 (1973)
Huey RAMSEY et al., Plaintiffs-Appellees,
v.
CONTINENTAL INSURANCE COMPANY, Defendant-Appellant.
No. 12148.
Court of Appeal of Louisiana, Second Circuit.
October 10, 1973.
Rehearing Denied, November 13, 1973.
Writ Refused December 19, 1973.
Lunn, Irion, Switzer, Johnson & Salley, by Richard H. Switzer, Shreveport, for defendant-appellant Continental Ins. Co.
Campbell, Campbell, Marvin & Johnson, by John T. Campbell, Minden, for plaintiffs-appellees.
Bodenheimer, Jones, Klotz & Simmons, by G. M. Bodenheimer, Jr., Shreveport, for third party defendant-appellee Traders & General Ins. Co.
Before BOLIN, HALL and WILLIAMS, JJ.
Rehearing Denied, En Banc. November 13, 1973.
BOLIN, Judge.
This case, which was consolidated for trial and appeal with that of H. H. Seymour v. Continental Insurance Company, arose out of a shooting accident in which Steven Ramsey and Danny Seymour were wounded about the head and face by a blast from a shotgun belonging to and discharged by Marty Wood. The accident occurred February 28, 1972, on the premises of Heflin High School, Heflin, Louisiana. At the time of the accident the three boys were minors residing with their parents but Steven reached the age of eighteen on August 11, 1972, three days before suit was filed. [Sec. 1, Act 98 of 1972, declaring that persons of the age of eighteen years shall be considered adults, became effective July 26, 1972.]
*372 Plaintiffs in this suit are Huey Ramsey, father of Steven, who seeks recovery of medical and related expenses, and Steven Ramsey who seeks recovery of damages for his personal injuries. In the companion suit plaintiff, H. H. Seymour, father of Danny Seymour, is suing individually and as administrator of the estate of the minor, Danny, seeking medical expenses and personal injury damages on behalf of his son.
Continental Insurance Company, made defendant in both suits, was sued under the liability provisions of a homeowner's policy issued to Martha Jones Wood, mother of Marty Wood. Continental filed a general denial to the petitions and, alternatively, by third party petition against Traders & General Insurance Company, liability insurer of the Wood vehicle, seeks reimbursement for whatever judgment it may be cast. It is further alleged in the alternative that Traders & General is the primary insurer and, if Continental is liable, its liability is only for any sums awarded in excess of the primary insurance.
After trial judgment was rendered against Continental Insurance Company and in favor of Huey Ramsey for $500; in favor of Steven Ramsey in the amount of $25,000; and fixing the expert witness fee for Dr. J. C. Hardin, Jr., at $50, which was taxed as costs. In the companion case judgment was rendered in favor of H. H. Seymour and against Continental for $500 medical expenses; rejecting the demands of Seymour for damages to the minor, Danny; and fixing the expert witness fee of Dr. J. C. Hardin, Jr., at $50, which was taxed as costs. All claims of Continental as third party plaintiff against Traders & General were rejected and Continental was assessed for all costs in both suits. From these judgments only Continental has appealed.
This appeal is almost wholly concerned with the interpretation of an exclusionary clause in the homeowner's insurance policy issued by Continental. The clause in question provides:
"This policy does not apply:
1. Under Coverage EPersonal Liability and Coverage FMedical Payments to Others:
a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
* * * * * *
(2) any motor vehicle owned or operated by, or rented or loaned to any insured; but his subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises; * * *."
With the exception of one minor detail the facts are undisputed.
Marty Wood, Steven Ramsey and Danny Seymour were full-time students of Heflin High School and members of its high school baseball team. Marty and Steven each used their family automobiles to drive to and from school and, while at school, they parked in an area in front of the high school building.
On the day of the accident Marty took with him to school his Winchester pump shotgun which he had placed in the car the night before and failed to remove. When he arrived at school he parked as usual and left the gun in the car and the car unlocked with the keys in the ignition.
After baseball practice the students returned to the gym to get their clothes and then proceeded to their respective automobiles to return home. Steven and Danny, who were riding together, went to Steven's car; Jack Warren and Chris Franklin, who were riding home with Marty, left the *373 gym shortly ahead of Marty and had gone to Marty's car and entered the vehicle. Marty was the last to arrive. Whether he got in the car, as he and Jack testified he did, or whether he was standing alongside, as Danny and Steven testified they thought he was, is the only disputed factual issue. However, it is conceded that this issue is not controlling.
Upon arriving, but before starting the motor, Marty removed the gun from its position in the front seat with the intention of putting it behind the front seat. In the meantime, Steven had backed his car, turned right and started slowly forward, at the same time continuing to talk to Marty. When Marty turned to place the gun in the rear, and when Steven was in the act of passing to the rear of Marty's automobile, the gun accidentally discharged and the entire charge struck Steven in the face and Danny in the top of his head. Steven suffered extensive injuries, the principal ones being loss of his right eye and loss or damage to all nerve and muscle function in the right side of his face. Danny had numerous pellets in his face and skull but these were eventually removed without residual disfigurement or loss of function.
Unquestionably, as found by the trial judge, the accident was caused by the negligence of Marty Wood; further, the injuries suffered by Steven were such that he should be awarded the full policy limit; consequently, neither Marty's negligence nor quantum is an issue on appeal.
As stated earlier, the controversy centers around which insurance company is liable for the damages inflicted. Continental urges that the jurisprudence supports its position that since Marty Wood, the insured, was seated in his car while moving the gun from the front to the back seat preparatory to driving the car home, he was "using" the vehicle within the intendment of the exclusionary clause quoted above.
In opposition to this contention Traders & General cites another line of cases in which the language is more consonant with its contention that the accident was not a natural and reasonable incident or consequence of the use of the vehicle for the purposes contemplated by the policy and therefore the automobile liability policy does not apply.
The critical testimony germane to this issue is that of Marty Wood relative to the original position of the gun and to his reasons for moving it from the front to the back of the car. On cross-examination, when asked why he moved the gun, he replied:
"A. To just get it out of the way and be safe.
Q. It was interfering with the operation of your car?
A. Yes, sir, it'd slide back and forth and there was gonna be another guy setting up there.
Q. You wanted to get that gun out of the way, so you could operate your car, is that what you say?
A. Well, I really could operate it with the gun in front, see, I was just gonna move it for safety reasons just `cause I didn't want it up there."
Numerous cases have been cited by both Continental and Traders & General in support of their opposing contentions. Continental concedes there is a division of authority throughout the United States as to whether or not coverage is extended in circumstances as are here presented.
Three frequently cited Louisiana cases dealing with interpretation of "arising out of the use of the automobile" clause in liability insurance policies are: Cagle v. Playland Amusement, Inc., 202 So.2d 396 (La.App. 4 Cir. 1967); Baudin v. Traders & General Insurance Co., 201 So.2d 379 (La.App.3d Cir. 1967); United States Fidelity & Guaranty v. Burris, 240 So.2d 408 (La.App.2d Cir. 1970).
*374 In Cagle a security guard, at the request of the vehicle owner, had used his gun butt to break a car window to allow the owner to enter the vehicle for the purpose of continuing a trip after the owner had absentmindedly locked himself out of the car. As the gun struck the window it discharged, injuring plaintiff. In holding the injury to be one "arising out of the use" of the vehicle, the court cited with approval the language in Speziale v. Kohnke (La. App. 4 Cir. 1967), writs refused, 194 So.2d 485. In Speziale the court of appeal avoided setting down a specific test for "arising out of the use" clause; rather it stated the words provide their own test and simply require a reasonable interpretation as to any given set of facts. The question presented in that case was, "is injury resulting from the throwing of fireworks from a moving vehicle injury `arising out of the use of the automobile?" The court answered in the following language:
"We are in accord with the treatment of the clause in our jurisprudence as exemplified by the Vogt and Tucker [Vogt v. Hotard, La.App., 144 So.2d 714; Tucker v. State Farm Mutual Auto Ins. Co., La.App., 154 So.2d 226,] cases supra. As with the Tucker case it is obvious that this case does not involve an `arising out of the use of an automobile' as reasonably contemplated by that clause. That the circumstances here are not within the clause is accentuated by the fact that the act of throwing a firecracker was a voluntary deliberate act on the part of the automobile passenger. This factor, along with the entire set of circumstances removes the connexity of the incident with the use of an automobile to the realm of insignificance."
A contrary result was reached in Baudin, supra, in which it was held that a man sitting in his parked car, who gave directions to a child causing the child to be struck by another vehicle when darting into traffic, was "using" his automobile within the terms of the policy.
While it is true both Cagle and Baudin held the acts in those cases constituted a "use" of the automobile causing a risk that the parties contemplated would be covered by the automobile liability policy, nevertheless in each case the court found actual connexity between the use and the accident. Thus it appears the test is two-foldwas the car being used at the time of the accident and was the use thereof directly connected with or a cause of the ensuing accident or injuries?
In United States Fidelity & Guaranty v. Burris, supra, the court reversed a summary judgment rendered by the trial court in favor of the automobile liability insurer of the Burris vehicle. The court reveiwed a number of cases, including Cagle and Baudin and held that the circumstances surrounding or leading up to an accident should be examined in determining if that accident arose out of the "use" of the automobile or truck. The court concluded that by looking to what part the automobile played in the entire scheme the courts can determine if there is coverage; further, that each case must depend on its facts according to the part the automobile played in the scheme.
In a well written opinion the trial judge stated his conclusions as follows:
"The issue is whether Marty Wood was using his vehicle so that coverage by the automobile liability insurer will apply. In the opinion of the court, while Marty Wood may have been using his vehicle, this accident was not the result of that use but rather the result of the discharging of the shot gun which itself had no relationship to the use of the vehicle."
We are in accord with the trial judge's conclusion. We find from the testimony of Marty Wood, a portion of which is quoted supra, and from the testimony of Jack Warren, as well as from all the surrounding facts and circumstances that the gun was moved for the sake of safety; further, that the movement of and the subsequent accidental discharge of the gun did *375 not "arise out of the use" of the automobile nor did it have any connexity with the use of the vehicle. Consequently, the exclusionary clause of the Continental homeowner's policy does not exclude coverage of this accident. Continental has failed to show that the automobile liability policy issued by Traders & General to the Woods afforded primary coverage and accordingly the lower court properly rejected Continental's third party demand.
For the foregoing reasons we affirm the judgment of the district court. Appellant is cast for all costs.