366 So.2d 197 (1978)
Don FREEMAN, Plaintiff-Appellee,
v.
C. D. BELL, Willie Brewer, and Willie Brewer and Associates, Inc., Defendants-Appellants.
No. 13692.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1978.
Rehearing Denied January 10, 1979.
Writ Refused March 23, 1979.
*198 Piper & Brown by Robert E. Piper, Jr., Shreveport, for defendants-appellants.
Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for plaintiff-appellee.
Before BOLIN, HALL and JONES, JJ.
En Banc. Rehearing Denied January 10, 1979.
BOLIN, Judge.
Plaintiff sued for personal injuries resulting from being shot in the head by the doorman at a discotheque club. Defendants are C. D. Bell, the doorman; Willie Brewer, the general manager; and Willie Brewer and Associates, Inc., owner of the club. Following a jury trial, judgment was rendered in plaintiff's favor against all three defendants in solido for $250,000. Defendants appeal and we affirm.
There are multiple issues relating to liability and quantum which we shall set forth and discuss separately.
Plaintiff went to the Afrocana Club in Bossier City on the evening of April 7, 1977. He attempted to enter the club while carrying a drink, which was against club rules. He complied with a request by the doorman, Bell, to discard the drink. Later in the evening plaintiff went outside and was again carrying a drink when he tried to re-enter. The doorman testified that he pointed out the club rules posted on a wall to plaintiff, when plaintiff cut him on the right thumb with either a knife or a bottle opener. The doorman said he reached into his pocket for his gun and plaintiff grabbed for the gun. A struggle ensued and the gun, held by the doorman, went off and shot plaintiff in the head. Plaintiff was unable to testify with respect to the shooting because of amnesia.
The only other witness to the encounter to testify was another customer, Willie Mae Walker. She said there was a tussle between plaintiff and the doorman after the doorman apparently told plaintiff to leave the club. She testified plaintiff did not cut the doorman prior to the shooting.
Defendants' first contention on appeal is that plaintiff provoked the shooting by violating club rules and cutting the doorman's right thumb. It is well settled that an aggressor is precluded from recovering *199 damages incurred as a result of his own actions. However, if the person attacked employees excessive force in defending himself he is liable for damages for the injuries caused by the use of excessive force. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); Porche v. Fernandez, 286 So.2d 418 (La.App. 4th Cir. 1973); Flores v. Black, 260 So.2d 144 (La.App. 2d Cir. 1972). The testimony conflicted as to whether or not plaintiff cut the doorman's thumb. The jury apparently accepted Willie Mae Walker's testimony that plaintiff did not cut the doorman prior to the shooting. We find no error in the jury's rejection of the aggressor defense. The record also supports a finding that the doorman's use of the pistol constituted excessive force under the circumstances.
Defendants next argue the jury erred in finding that an intentional tort [battery] occurred because the shooting resulted from an accidental discharge of the gun. The doorman testified he did not intend to shoot plaintiff but only meant to scare him. Nevertheless, the doorman's aggressive action in pulling a loaded pistol out of his pocket supports a conclusion that he intended the result which was almost certain to follow. Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir. 1975); Kipp v. Hurdle, 307 So.2d 125 (La.App. 1st Cir. 1975). The facts support a finding that a battery occurred.
Defendants next argue the jury erred in finding Willie Brewer, in his capacity as general manager of the Afrocana Club, liable to plaintiff. In addition to being the general manager, Brewer was the president and a major stockholder of the corporation which owned the club. In his capacity as general manager he testified he was responsible for hiring and firing club employees and in seeing that the club was run in an orderly manner.
The essence of plaintiff's case against Brewer was that he was negligent in hiring Bell as doorman and in keeping him in that position because he had knowledge that Bell was dangerous. Plaintiff relies upon the following test set forth in Canter v. Koehring Company, 283 So.2d 716 (La.1973) for holding Brewer liable for breaching a duty of care owed by him to plaintiff in his capacity as an employee of the club:
1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.
The owner of a public place owes patrons a duty to exercise reasonable care to protect them from harm from other patrons or employees. Borne v. Bourg, 327 *200 So.2d 607 (La.App. 4th Cir. 1976). The record supports a finding that this duty of care towards patrons was delegated to the general manager, Brewer, was responsible for the personnel and maintaining order.
Further, there is evidence supporting a finding that Brewer breached his duty of care toward plaintiff by retaining the doorman as an employee as he was aware of Bell's propensity toward violence. One former patron testified that Brewer was aware of an incident when Bell had threatened him with a gun when the patron came to the club to pick up a friend. On cross-examination Brewer admitted that Bell had shot another patron at the club. Brewer testified that after the shooting incident he told all the employees they would be discharged if they came to work with a gun. The record reflects, however, that this policy was not strictly enforced. We find no error in the jury verdict holding the general manager liable to plaintiff.
Defendants also argue the trial court erred in allowing into evidence the testimony referred to above concerning the prior threat and shooting incident by the doorman. Defendants contend these inquiries into specific acts by the doorman were improper impeachment evidence and were highly prejudicial.
We find this evidence was introduced for the purpose of establishing the general manager's negligence in retaining Bell as a doorman. The trial judge on several occasions carefully admonished the jury that any past acts of misconduct on the doorman's part were not to be considered in the case against him but were only relevant insofar as the general manager was concerned. Under these circumstances we find no error.
Defendants next argue that the trial court erred in allowing an economist to testify as to plaintiff's future loss of wages because there was not a sufficient evidentiary basis for the testimony. The economist projected that about $462,000 would recompense plaintiff for future lost wages. The projection was based upon a $13,500 annual salary for a draftsman and a condition of total and permanent disability. Defendants objected to the testimony on the ground that plaintiff did not have a work history and that it had not been established that plaintiff was permanently disabled.
The trial court ruled that a sufficient predicate had been laid for the testimony and that the defendants' objections affected the weight to be given the testimony rather than its admissibility. We find no error in this ruling. Plaintiff was a college sophomore majoring in drafting when he was shot in the head. The medical testimony indicates that plaintiff has very limited use of his right arm and leg, and has expressive aphasia stemming from brain injuries caused by the severe head wound. He also suffers from post-traumatic epilepsy. Although the medical testimony indicates he may gradually improve with time, he is for all practical purposes totally and permanently disabled.
Defendants' final argument on appeal is that the $250,000 jury award is excessive. The medical testimony established that the bullet entered plaintiff's head from the rear and traveled through portions of his brain which govern right arm and leg movement and speech abilities. He underwent a carotid arteriogram and surgery to remove the bullet. Some bullet fragments still remain in his skull and the brain tissue which was destroyed will not regenerate. As a result of the brain damage plaintiff has very limited use of his right extremities. One surgeon testified that plaintiff would be unable to use his right hand in any meaningful or gainful activity. As a result of the bullet traveling through the speech center of his brain, plaintiff suffers from expressive aphasia which is the inability to effectively verbalize his thoughts. He also developed post-traumatic epilepsy. Considering the severity of these injuries together with the testimony concerning future loss of wages, we find the award is within the jury's range of discretion.
The judgment is affirmed at appellants' cost.