396 So.2d 562 (1981)
Sam Leroy TOBIN, Plaintiff-Appellee,
v.
Lester T. WILLIAMS et al., Defendants-Appellants.
No. 8031.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
*563 Robert L. Salim, Richard N. Ware, Natchitoches, for defendants-appellants.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr. and Gahagan & Gahagan, H. C. Gahagan, Jr., Natchitoches, for plaintiff-appellee.
Before GUIDRY, CUTRER and LABORDE, JJ.
GUIDRY, Judge.
In this tort suit the plaintiff, Sam Leroy Tobin, seeks recovery of damages for injuries sustained as a result of a shooting incident. Named as defendants are Lester T. Williams, the alleged tortfeasor; Commercial Union Insurance Company (hereafter, Commercial), Williams' homeowner's insurer; and, American Employer's Insurance Company (hereafter American), Williams' automobile liability insurer. The trial court rendered judgment in favor of plaintiff against Williams for the sum of $30608.61,[1] but dismissed plaintiff's demands against both insurers. Williams appealed contending primarily that the trial court erred in dismissing both insurers. Tobin answered the appeal seeking an increase in the damage award.
The facts of the instant case are accurately and succinctly set forth by the trial court in its written reasons. We quote therefrom:
"This was a petition for personal injury filed by Mr. Sam Leroy Tobin against Mr. Lester Terry Williams; his wife's homeowners insurer Commercial Union Insurance Company; and Mr. Williams' automobile insurer, American Employers (sic) Insurance Company.

It seems that on November 7 (sic) 1978, at aprroximately (sic) 8:00 P.M., Mr. Williams, along with a friend, John Wheat, drove to Mr. Tobin's residence on Woodyard Drive in Natchitoches.
According to Mr. Williams' testimony, the purpose of this visit was to discuss with Mr. Tobin the matter of a promissory note at the Bank of Coushatta which was in plaintiff's name, and which Mr. Williams had co-signed. Apparently, Mr. Tobin was behind in his payments on the note, and Mr. Williams had received a delinquent notice.

Mr. Williams' testimony reveals that he, along with his passenger, Mr. Wheat,[2]drove in his pick-up into plaintiff's driveway and blew the horn for plaintiff to come out, which he did; dressing (sic) in pajamas and shirtless.

Mr. Williams had in his possession a .357 magnum pistol which was lying on the truck seat and which he testified he carried with him at all times for `protection.'[3]
The two men exchanged small talk for a few minutes and then got down to the business of the delinquent note, and a heated argument ensued.

At this time, Mr. Williams was still behind the wheel of the truck, while the plaintiff was outside the window on the *564 driver's side. When Mr. Williams could no longer restrain his anger, he shoved the door open, pushing plaintiff backward, and `automatically reached for his pistol'.

He testified that his intention in grabbing the pistol was to `keep him off me', since Mr. Tobin was a big man and he was afraid of him. Mr. Williams said he felt the barrel of the gun move downward and then it went off. He swore that he never aimed it, has no recollection of pulling the trigger, and had no intention of shooting plaintiff.
He further testified that at the time the gun discharged, he had both feet on the ground and was completely free of the vehicle, and did not strike the vehicle prior to the discharge.
Williams then saw that the bullet had struck Tobin and asked him if he needed an ambulance. He replied, `No', and Williams drove away to Shamrock Liquor Store, called the police and told them what he had done, went to his mother's house to change clothes, then called the Sheriff's Office and went in and turned himself in."
The issues on appeal are: (1) was the bodily injury sustained by plaintiff "either expected or intended from the standpoint of the insured"; (2) did the injury arise out of the use of Williams' automobile; (3) is the general damage award excessive; and, (4) did the trial court err in refusing to award damages for lost wages.

DID THE TRIAL COURT ERR IN DISMISSING PLAINTIFF'S SUIT AS AGAINST COMMERCIAL?
The trial court dismissed plaintiff's suit against Commercial finding applicable an exclusionary clause in Commercial's policy which reads as follows:
"This policy does not apply:
1 Under Coverage EPersonal Liability and Coverage FMedical Payments to Others
* * * * * *
f. to bodily injury or property damage which is either expected or intended from the standpoint of the insured."
On appeal Williams contends that the exclusionary clause does not apply because he did not intend to shoot Tobin. We agree with the learned trial judge that under the particular facts of this case the exclusionary clause applies.
That the bodily injury which Williams inflicted on Tobin was either "expected or intended from the standpoint of the insured" may be inferred from the circumstances when one considers the purpose of Williams visit to Tobin and the ensuing events which occurred after his arrival at the Tobin home. As stated by the trial judge:
"... Mr. Williams drew a loaded .357 magnum pistol, and thrust it in the direction of the plaintiff, causing it to discharge. Given this conduct, any reasonable person would have to conclude that injuries were almost certain to result from such a dangerous course of action. A person who points a loaded pistol at someone and pulls the trigger should not be absolved from liability simply by claiming: `I only meant to scare him.'"
As set forth in Prosser, Law of Torts (West 1964, pg. 32):
"Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does .... The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he intended it...."
The circumstances of the instant case are not unlike those present in Freeman v. Bell, 366 So.2d 197 (La.App. 2nd Cir. 1978). In Freeman, supra, the plaintiff and the defendant, a doorman at a bar, were engaged in an altercation when the doorman pulled out a gun which discharged as they wrestled, injuring the plaintiff. The defendant *565 testified that he had no intention of shooting the plaintiff but only intended to scare him. Our brethren of the 2nd Circuit nonetheless held that an intentional tort was committed, reasoning:

"Nevertheless, the doorman's aggressive action in pulling a loaded pistol out of his pocket supports a conclusion that he intended the result which was almost certain to follow. Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir. 1975); Kipp v. Hurdle, 307 So.2d 125 (La.App. 1st Cir. 1975)..."

Similarly, we determine that Williams' aggressive action in pulling out his loaded pistol and pointing it in the direction of Tobin supports the trial court's conclusion that he either "expected or intended" to inflict bodily injury on Tobin.
Plaintiff-appellee's reliance on our decision in Rambin v. Wood, 355 So.2d 561 (La.App. 3rd Cir. 1978) is misplaced. The case of Rambin, supra, is factually inapposite. In Rambin, supra, as in Sherwood v. Sepulvado, 362 So.2d 1161 (La.App. 2nd Cir. 1978), considering the slight force used by the aggressor, the courts found the requisite intent to injure lacking.

DID THE TRIAL COURT ERR IN DISMISSING PLAINTIFF'S SUIT AS AGAINST AMERICAN?
The trial court determined that the injury to Tobin did not arise out of the "ownership, maintenance, or use, including loading and unloading" of the insured vehicle and therefore no coverage was provided by the American policy. Appellant and plaintiff-appellee contend otherwise urging that since the pistol discharged as Williams exited the truck it is an occurrence "arising out" of the use of the truck.
The learned trial judge correctly disposed of this issue. In his written reasons for judgment the trial judge stated:

"The Louisiana Supreme Court, in Fertitta v. Palmer, 252 La. 336, 211 So.2d 382 [282] (1968) probably said it best when they held that the Court of Appeal, in denying that certain actions constituted `use' of the automobile, properly used a `common sense' approach.

The Court went on to say:
`The approach (common sense) thus followed will avoid, in future cases, ... possible absurd results...' (id., 211 So.2d at pg. 285).

Using this `common sense' approach, along with the two-fold test set out in Bruno v. Hartford Accident and Indemnity Company, et al., 337 So.2d 241 (La. App., 3rd Cir., 1976) and Ramsey v. Continental Insurance Company, 286 So.2d 371 (La.App., 2nd Cir., 1973), i. e.:

`(1) Was the vehicle being used at the time of the accident; and (2) Was the use thereof directly connected with or a cause of the ensuing accident.',
it seems that even the most imaginative among us would be inclined to agree that there was not a sufficient causual (sic) relationship existing between the truck and the injury, for the injury to be interpreted as `arising out of' or being `directly connected with' the use, ownership, or maintenance of the truck.
The fact that Mr. Williams was getting out of the truck or had gotten out of it at the time the shot was fired was purely incidental to the resulting injuries."

QUANTUM
Appellant's contention that the damage award in the instant case is excessive can be disposed of summarily. Although plaintiff had fully recovered from the effects of his injury by June of 1979, except for severe scarring in the area of his groin, the record reflects that he was hospitalized, underwent surgery, was totally incapacitated and suffered much pain for a considerable period of time. Although the award is generous we find that it is within the much discretion accorded the trier of fact.
We likewise reject plaintiff-appellee's contention that the trial court erred in not awarding lost wages allegedly resulting from his injuries. To support an award for this type of damages, the plaintiff must prove his loss with reasonable certainty. Speculation and probability cannot form the *566 basis for an award. Watson v. Hartford Acc. & Indemnity Co., 339 So.2d 480 (La. App. 2nd Cir. 1976), writ refused, 341 So.2d 1124 (La.1977); Burrows v. Louisiana State Department of Highways, 319 So.2d 867 (La.App. 3rd Cir. 1975); Wilson v. MaGee, 359 So.2d 315 (La.App. 4th Cir. 1978). Tobin was unemployed at the time of his injury. He stated that he was thinking of applying for a job but had not yet done so. Under the circumstances, it was not clearly wrong for the trial court to refuse to award damages for lost wages.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the defendant-appellant, Lester Terry Williams.
AFFIRMED.
NOTES
[1] The trial court awarded plaintiff $25,000.00 in general damages and special damages in the amount of $5608.61.
[2] John Wheat did not testify on trial of this matter. There is no specific explanation in the record for the failure of Wheat to testify other than the following remark by the trial judge which appears at page 192 of the transcript:

"John Wheat ... You'll have to catch him. He's in and out of this area and if you need the power of this Court to summon him in, if you do it in proper order, the Court will be glad to assist you..."
[3] Williams testified that he kept his pistol loaded at all times and when he decided to visit Tobin on the evening of November 7, 1978 he walked into his bedroom, "got my pistol, and walked out".