960 So.2d 99 (2007)
Bennett BLACKLEDGE, Bonnie Jill Blackledge, for and on Behalf of Their Minor Child, Brooks Blackledge
v.
Jackie FONT and Peggy Font, Liberty Mutual Fire Insurance Company, Victor Vidaurre and Debbie Vidaurre, for and on Behalf of Themselves and Their Minor Child, Jason Vidaurre, and Safeco Insurance Company of America.
No. 2006 CA 1092.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*100 Felix A. DeJean, IV, Linda L. Lynch, Baton Rouge, for Plaintiffs-Appellants, Bennett Blackledge, Bonnie Jill Blackledge, and Brooks Blackledge.
Patrick F. Robinson, C. Frank Holthaus, Baton Rouge, for Defendants-Appellees, Jackie Font, Peggy Font, and Liberty Mutual Insurance Company.
Andrew W. Eversberg, Baton Rouge, for Defendants, Victor Vidaurre, Debbie Vidaurre, and Safeco Ins. Co. of America.
Before: CARTER, C.J., WHIPPLE, and McDONALD, JJ.
CARTER, C.J.
Plaintiffs, a teenage boy and his parents (the Blackledges), appeal from a trial court ruling granting summary judgment in favor of defendants, Jackie and Peggy Font (the Fonts) and Liberty Mutual Insurance Company (Liberty Mutual), dismissing their claims arising from an incident in which Brooks Blackledge was injured in an altercation with another teenage guest at the Fonts' residence.[1] For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 23, 2002, a group of teenagers finished their high school final exams and gathered at the Fonts' home with their teenage son, Kevin Font, for an end-of-year party. Even though Mr. and Mrs. Font planned to work away from their house on the day of the gathering, they believed that Kevin and his friends were mature enough to be at their home without adult supervision, so they gave their permission for Kevin to have a group of three or four teenagers come to their house mid-morning after exams. Mrs. Font was due home from work that day at her usual time *101 of 1:00 p.m. It is undisputed that the Fonts had never experienced or witnessed any violence from any teenager at their home before the day of this party.
One of the teenagers invited to the Font's house was Jason Vidaurre, who had just finished his junior year along with Kevin. Kevin and Jason had been friends since the first grade, and Jason had previously been to the Fonts' home. Both Kevin and Jason knew a freshman friend of Jason's brother, Brooks Blackledge. It is undisputed, however, that Kevin's parents did not know Brooks or Brooks' parents, and Brooks was not one of the teenagers that the Fonts had given express permission for Kevin to have at their house after the exams that day. Nevertheless, unbeknownst to the Fonts, Brooks' mother, Bonnie Jill Blackledge, transported Brooks and four of his friends to the Fonts' house for the party after exams. Mrs. Blackledge was under the mistaken impression (from the representation of one of the teenagers that she was transporting, David Albus) that Mrs. Font was present at the house for the party. Notwithstanding Mrs. Blackledge's strong belief that it is irresponsible to leave a child at an unsupervised home where she does not know the parents, at no time did she verify the presence of Mrs. Font, and she did not meet with or speak to Mr. or Mrs. Font regarding adult supervision for the party.
Throughout the morning, more teenagers arrived at the party and Kevin allowed all of them to stay. At one point, Jason threw Brooks in the Fonts' swimming pool and he ran through parts of the Fonts' house without clothing. Even though Kevin was aware of this rowdy behavior, he never asked any of the teenage guests to leave the party, because he did not perceive that there was any trouble.
Around noon, before Mrs. Font arrived home from work, Kevin and Jason (the juniors) and David and Brooks (the freshman) decided to play a game of two-on-two basketball (juniors versus freshman) in the Fonts' driveway. The game was competitive and physically rough, with heated words and "trash talk" being exchanged. The juniors did not want to lose to the younger team. After approximately 15 minutes of play, while Brooks was aggressively guarding and reaching around Jason as they both tried to grab the basketball, Jason suddenly dropped the ball, pushed Brooks off of his back, and swung his fist around his body into Brooks' face. Jason's movement was so quick and unexpected that neither of the other two teenagers, David or Kevin, had time to react or attempt to stop Jason's violent act. Brooks immediately fell to the ground, hitting his head on the concrete. He began to tremble and he lost consciousness. As a result of the hit and fall, Brooks sustained a serious head injury. By the time that Mrs. Font arrived home from work at 1:00 p.m., Brooks had been taken to his mother, Mrs. Blackledge, who took him to the hospital. Mrs. Font did not learn about Brooks' injury until an hour or so later. As a result of this incident, Jason served nine months on supervised probation for second-degree battery.
The Blackledges filed suit against the Fonts and their homeowner's insurer, Liberty Mutual, on May 22, 2003. The Fonts and Liberty Mutual answered and then filed a motion for summary judgment, maintaining that the Blackledges could not meet their burden of proof regarding any duty to supervise owed by the Fonts, or that the alleged breach of duty was the cause-in-fact of Brooks' injury since it was the result of Jason's sudden and unforeseen criminal act. After a hearing on October 24, 2005, the trial court ruled in favor of the Fonts and Liberty Mutual, granting summary judgment and dismissing *102 the Blackledges' demands. The Blackledges appealed, arguing that the trial court erred (1) in granting the motion for summary judgment, (2) in finding no duty to protect and supervise the teenagers, and (3) in finding the incident was unforeseeable and could not have been prevented even with supervision.

LAW AND ANALYSIS
An issue of negligence or fault can be decided on a motion for summary judgment, provided that the evidence leaves no relevant, genuine issue of fact, and reasonable minds must inevitably conclude that the mover is entitled to judgment based on the facts before the court. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 752; Cates v. Beauregard Elec. Co-op., Inc., 328 So.2d 367, 370 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). In Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La.3/10/06), 923 So.2d 627, 632-633, the Supreme Court summarized the applicable legal principles regarding summary judgment and duty-risk analysis as follows:
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. A court must grant a motion for summary judgment "if the depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). The summary judgment procedure is favored under our law. LSA-C.C.P. art. 966(A)(2). Paragraph C(2) of Article 966, which reads as follows, is especially pertinent in the instant case:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. (Emphasis supplied in original.)
Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. The dutyrisk analysis is the standard negligence analysis employed in determining whether to impose liability under LSA-C.C. art. 2315. This approach provides an analytical framework for evaluation of liability. One analysis requires proof by the plaintiff of five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability.

*103 A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.
(Case citations omitted.)
Louisiana law is clear that there is no duty to protect against or control the actions of a third party that causes physical injury to another unless a special relationship exists to give rise to such a duty. Beck v. Schrum, 41,647 (La.App. 2 Cir. 11/1/06), 942 So.2d 669, 672; Corley v. Delaney, 92-899 (La.App. 3 Cir. 12/15/93), 629 So.2d 1255, 1258, writs denied, 94-0481, 94-0636 (La.4/22/94), 637 So.2d 156. Courts traditionally have found such relationships to exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restaurateur and patron, jailer and prisoner; and teacher and pupil. Beck, 942 So.2d at 672. In the case sub judice, none of these special relationships exist between the Fonts and Brooks Blackledge. Brooks and Jason were both guests in the Fonts' home, although Brooks was initially uninvited.[2] We have found no statutory authority or jurisprudence holding that a homeowner has a duty to protect against or control one guest's unexpected criminal actions toward another guest.
Under our jurisprudence, a homeowner is not an insurer of the safety of persons lawfully on the premises. In general, the duty owed by the owner of a home to a social guest is to avoid reasonably foreseeable danger to the guest and to keep the premises safe from hidden dangers in the nature of traps or pitfalls. Broussard v. Peltier, 499 So.2d 1026, 1028 (La.App. 3 Cir.1986); Beckwith v. State Farm Fire & Cas. Co., 393 So.2d 155, 157 (La.App. 1 Cir.1980), writ denied, 399 So.2d 209 (La.1981). Furthermore, our supreme court has recognized that generally, there is no duty to protect others from the criminal activities of third persons. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, 766, citing Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). Thus, the duty imposed by law on a homeowner does not extend to unanticipated or unforeseeable criminal acts of a third person. Fontenot v. Bolfa, 549 So.2d 924, 926 (La.App. 3 Cir.1989). Only when the owner has knowledge or can be imputed with knowledge of a third person's intended criminal conduct which is about to occur, and which is within the power of the owner to protect against, does such a duty toward a guest arise. See Davenport v. Nixon, 434 So.2d 1203, 1205 (La.App. 1 Cir.1983). As explained in Posecai, 752 So.2d at 766, before a duty can be imposed on the landowner, it must be determined whether the criminal act in question was reasonably foreseeable. Thus, the preliminary question as to the foreseeability of the criminal act must be addressed. Patton v. Strogen, 39,829 (La.App. 2 Cir. 8/17/05), 908 So.2d 1282, 1288, writ denied, 05-2397 (La.3/17/06), 925 So.2d 548.
Some of the deposition testimony excerpts submitted in support of and in opposition to the summary judgment came from the teenagers involved in the basketball game at the Fonts' house. The testimony reveals that the sudden criminal attack perpetrated by Jason against Brooks *104 was not reasonably foreseeable. No one who was participating in the basketball game had any reason to anticipate Jason's violent behavior when Brooks was attempting to wrestle the basketball away from Jason. Kevin and David both testified in their depositions that they could not have stopped Jason's swift attack on Brooks because neither one of them knew that it was about to happen. Similarly, even Jason's deposition testimony confirmed that his action was extremely quick and it was an impulsive reaction.
Although the teenagers were trash-talking and the game was very competitive and aggressive, there was no evidence of any fighting before Jason's attack against Brooks. There was also no evidence that Jason had a history of violent tendencies, outbursts, or unruly behavior. Thus, the evidence submitted reasonably supports the conclusion that the events surrounding Brooks' injury happened rapidly and without warning, giving little time for anyone to react in order to protect Brooks. Under the undisputed material facts of this case, the duty imposed by law on the Fonts to protect their houseguests did not extend to this unforeseeable and unanticipated criminal act by Jason.[3]
The Blackledges strongly urge this court to find, as a matter of law, that the Fonts breached their duty to supervise their teenage son's party. As a general rule, a person (non-parent) who voluntarily agrees to undertake the control and supervision of a child has the duty to use reasonable care to protect the child from injury. Such a person is not the insurer of the child's safety, but is required to use reasonable care commensurate with the reasonably foreseeable risk of harm to which the child might be subjected while under his control and supervision. Turner v. Parish of Jefferson, Through Dept. of Recreation, 98-336 (La.App. 5 Cir. 10/14/98), 721 So.2d 64, 74, writs denied, 98-2823, 98-2859, 98-2861 (La.1/8/99), 735 So.2d 636, 638; Muse v. Dunbar, 97-582 (La. App. 3 Cir. 6/10/98), 716 So.2d 110, 114, writs denied, 98-1851, 98-1870 (La.11/6/98), 727 So.2d 448; Bordelon v. Pelican State Mut. Ins. Co., 599 So.2d 511, 513 (La.App. 3 Cir.1992); Freeman v. Wilcox, 303 So.2d 840, 842 (La.App. 1 Cir. 1974), writ denied, 307 So.2d 630 (La. 1975).
In the case before us, it is undisputed that the Fonts never spoke to the Blackledges about agreeing to control and supervise Brooks or any other teenager at the party.[4] The record simply does not support a conclusion that the Fonts voluntarily agreed to take control of Brooks. Furthermore, as we have already discussed, the cause-in-fact of Brooks' injury was not that the Fonts were absent and did not supervise the party. Brooks' injury was caused solely by Jason's intentional *105 act of punching Brooks in the face during the basketball game. This unfortunate incident occurred so quickly that even if the Fonts had been present at the party and were actually standing by the teenagers while they played the basketball game, they would not have been able to keep Jason from impulsively reacting to Brooks' attempt to steal the ball by punching Brooks in the face, just as the two other teenagers involved in the game could not anticipate or stop Jason's actions.
The essential cause-in-fact element is missing from the Blackledge's negligence claim; therefore, it is unnecessary for us to determine whether the Fonts had a duty to supervise their teenage son's party.[5] While we recognize that parents have a general duty to supervise their minor children as well as those children they have voluntarily agreed to supervise, it is clear that no personal injuries would have resulted to Brooks absent Jason's sudden and unforeseeable violent behavior. Cf. Otwell v. State Farm Fire and Cas. Co., 40,142 (La.App. 2 Cir. 10/26/05), 914 So.2d 100, 106 (where no duty was breached by parents of a teenager who had a party without their knowledge, drove a car under the influence of alcohol after the party and was in a wreck due to his negligence wherein his guest passenger died); Peterson v. G.H. Bass & Co., Inc., 97-2843 (La.App. 4 Cir. 5/20/98), 713 So.2d 806, 809-810, writ denied, 98-1645 (La.10/16/98), 727 So.2d 441 (where grandparents breached no duty to supervise their teenage grandchildren who intentionally hid their misconduct of inhaling dangerous vapors of household products during a sleepover); Craig v. Sepulvado, 97-1076 (La.App. 3 Cir. 2/18/98), 709 So.2d 229, 232-233, writ denied, 98-0729 (La.5/1/98), 718 So.2d 414 (where a grandmother owed no duty to take extraordinary steps to guard against an accidental shooting of a teenage boy by her teenage grandson).

CONCLUSION
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiffs, Bennett Blackledge, Bonnie Jill Blackledge, and Brooks Blackledge.
AFFIRMED.
NOTES
[1] Suit was originally brought by the boy's parents, Bennett and Bonnie Jill Blackledge, for and on behalf of themselves and their minor child, Brooks Blackledge. When Brooks reached the age of majority on May 29, 2005, he was substituted as a party plaintiff along with his parents. The other named defendants, Victor and Debbie Vidaurre, for and on behalf of their minor child, Jason Vidaurre, and Safeco Insurance Company of America, are not a part of this appeal.
[2] It is undisputed that Kevin had the authority to ask any uninvited guests to leave his house, yet he did not direct any teenage guest to leave the party on the day in question.
[3] In a somewhat similar factual scenario, we note that the vast majority of Louisiana courts have found no liability on the part of school boards for fights occurring between students, or accidents at school, either because the school board did not breach its duty of reasonable supervision, or because the school board or school personnel could not have prevented the incident from occurring. See Wallmuth v. Rapides Parish School Board, 01-1779 (La.4/3/02), 813 So.2d 341, 347.
[4] This case is distinguished from Doe v. Jeansonne, 97-795 (La.App. 3 Cir. 12/10/97), 704 So.2d 1240, 1245-1246, writs denied, 98-0754, 98-0770 (La.5/8/98), 718 So.2d 433, 434, wherein the parent specifically agreed to supervise a teenage party and a teenager became pregnant after having sex at the party. Further, we note with interest one case, Trahan v. Gulf Ins. Co., 525 So.2d 1164, 1167-1168 (La.App. 3 Cir.1988), wherein the court found the parents of an injured teenage boy negligent for failing to provide or arrange for supervision for their son when they believed it to be necessary while the boy worked at his grandfather's house. However, any comparative negligence on Mrs. Blackledge's part is not at issue in this appeal.
[5] We seriously question, but leave for another decision, whether the parents of a teenager owe a duty of supervision to teenage party guests under a factual scenario wherein the parents have not voluntarily undertaken the control and supervision of any of the guests, invited or uninvited, and there is no evidence that any of the guests had known violent tendencies. See Garison v. Wells, 262 So.2d 820, 824 (La.App. 2 Cir.1972) (on rehearing), holding that a sixteen-year-old boy was capable of exercising reasonable supervision of a seven-year-old child and it was not negligent for the parents to leave the sixteen-year-old in charge. See also Carpenter v. Johnson, 95-0431 (La.App. 1 Cir. 12/15/95), 664 So.2d 1354, 1357, wherein we held that the mere presence of a crowd of reasonably well-behaved teenagers did not impose a special duty on a business owner to hire security guards.