# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2021 CA 0236

## WALTER W. PRICE AND MYSTERIE PRICE, BOTH INDIVIDUALLY AND ON BEHALF OF MINOR CHILD, F.P.

## VERSUS

## DARRYL NORTH, EDWARD NORTH, MONICA NORTH AND PATRICE HOOKFIN

Judgment Rendered: __OCT 1 8 2021__

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 520419

Honorable Richard "Chip" Moore, Judge Presiding

* * * * *

| | |
|---|---|
| Steven Edward Adams<br>Baton Rouge, LA | Attorney for Plaintiffs-Appellants,<br>Mysterie Price (Trahan) and F.P. |
| Michael Gerard Lemoine<br>Lafayette, LA | Attorney for Defendants-Appellees,<br>Jones Creek Congregation of<br>Jehovah's Witnesses, Baton Rouge,<br>LA Inc. and Watchtower Bible and<br>Tract Society of New York, Inc. |
| Alexis Myshrall Breedlove<br>Sydnee F. Menou<br>Michael P. Colvin<br>Baton Rouge, LA | Attorneys for Defendants-Appellees,<br>Darryl North, Edward North, Monica<br>North and Patrice Hookfin |
| Brad J. Brumfield<br>London, KY | |

Julie N. deGeneres
Baton Rouge, LA

Attorney for Intervenor-Appellee,
State Farm Insurance Company

\* \* \* \* \*

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**HESTER, J.**

Plaintiffs, F.P.[1] and Mysterie Price, her mother, appeal a trial court judgment granting the peremptory exceptions asserting the objections of no cause of action and prescription filed by defendants, Watchtower Bible & Tract Society of New York, Inc. and Jones Creek Congregation of Jehovah's Witnesses, Baton Rouge, LA, Inc. (f/k/a Sherwood Forest Congregation of Jehovah's Witnesses), and dismissing all of plaintiffs' claims against these defendants, with prejudice and at plaintiffs' cost. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 23, 2003, thirteen-year-old F.P. was entrusted into the care of twenty-year-old Patrice Hookfin. F.P. and Patrice were set to distribute religious materials door-to-door early the next morning for their church, so F.P. was allowed by her parents to stay with Patrice overnight. That evening, instead of bringing F.P. to the Hookfin home, Patrice took F.P. to the home of Edward and Monica North where their son, Darryl North, was residing at the time. Darryl was home with two friends, Sebastian Bracey and Darrell Bickham, all of whom were consuming alcoholic beverages. Patrice instructed F.P. to go to an upstairs bedroom and wait for her; however, Darryl was already in the bedroom and persuaded F.P. to consume alcoholic beverages. F.P. lost consciousness and awoke the next morning. It is believed that F.P. was sexually assaulted by Darryl North, Sebastian Bracey, Darrell Bickham, and possibly two other individuals while at the North home.

Despite never being at the Hookfin home, Margaret Hookfin, Patrice's mother, lied to F.P.'s mother, stating that Patrice and F.P. left the Hookfin home at 7:30 a.m. on May 24, 2003 to begin their service work. Later in the day on May 24, 2003, F.P. was finally returned home to her mother. At this time, F.P. was still

---

[1] The victim is referred to by her initials to preserve her anonymity. See Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

incoherent but began to realize what had happened to her the night before. Mysterie took F.P. to the hospital where an examination of F.P. revealed that she had been sexually assaulted and a blood analysis indicated that F.P.'s blood alcohol level was 7.0 mg/dL.

Walter[2] and Mysterie Price, individually, and on behalf of their minor child, F.P., filed their initial petition for damages on May 21, 2004, naming Darryl North, his parents Edward and Monica North,[3] and Patrice Hookfin as defendants. Plaintiffs sought damages for the injuries to F.P., as well as bystander damages pursuant to La. Civ. Code art. 2315.6. Through subsequent pleadings and motions, plaintiffs joined as defendants Darrell Bickham, Sebastian Bracey, and the Norths' homeowner's insurer, State Farm Insurance Company. In the first supplemental and amending petition, F.P. was substituted as plaintiff in her own right, after attaining the age of majority.

In the second supplemental and amending petition filed on November 12, 2015, the remaining plaintiffs, Mysterie Price and F.P., added as defendants Watchtower Bible & Tract Society of New York, Inc. ("WBTS"), a national corporation utilized by Jehovah's Witnesses, and Jones Creek Congregation of Jehovah's Witnesses, Baton Rouge, LA, Inc. (f/k/a Sherwood Forest Congregation of Jehovah's Witnesses) (the "Congregation") (sometimes hereinafter collectively referred to as "defendants"). Plaintiffs were members of the Congregation and identified Frank Boley, Timothy Brown, and Paul Wood as members and agents of the board of directors of the Congregation. Plaintiffs alleged that their injuries were proximately caused by the negligence of WBTS and the Congregation, noting that Boley, one of the Congregation's board members, admitted to knowing about

---

[2] All claims of Walter Price were dismissed without prejudice on November 9, 2015.

[3] Plaintiffs voluntarily dismissed Edward and Monica North from the suit, without prejudice.

problems with Patrice and knowing that she was a predator who sought out people having problems.

In response to the second supplemental and amending petition, WBTS and the Congregation filed a peremptory exception raising the objection no cause of action, asserting that plaintiffs had not stated a cause of action against them for negligence or for bystander damages under La. Civ. Code art. 2315.6. The trial court overruled the exception as to the negligence claim and sustained the exception as to the claim for bystander damages. However, plaintiffs were given the opportunity to amend their petition to state a cause of action for bystander damages, which was done pursuant to a third supplemental and amending petition.

WBTS and the Congregation applied to this court for supervisory review of the trial court's failure to sustain the peremptory exception raising the objection no cause of action as to the negligence claims. On review, this court granted the writ, finding that plaintiffs' petitions failed to allege facts sufficient to prove the existence of a legal duty on the part of defendants and that defendants could not be liable for plaintiffs' damages incurred as a result of the tortious acts of third parties, negligent misrepresentation, or negligent supervision absent allegations of some special relationship among the parties giving rise to a legal duty. **Price v. North**, 2017-0402 (La. App. 1st Cir. 5/26/17), 2017 WL 2303595, *1 (unpublished writ action). After reversing the trial court's ruling and sustaining the exception, this court remanded the case with instructions to the trial court to issue an order granting plaintiffs the opportunity to amend their petitions to state a cause of action, if they could, pursuant to La. Code Civ. P. art. 934. **Id.**

On remand, plaintiffs filed a fourth supplemental and amending petition,[4] recasting all allegations as set forth in the pleading.[5] Plaintiffs added allegations that WBTS and the Congregation "were in a 'special relationship' with [p]laintiffs and were impressed with a duty to warn foreseeable victims of the foreseeable harm which might result from Patrice Hookfin[']s actions and inactions." Further, plaintiffs alleged that defendants were negligent in failing to warn of Patrice's known poor moral character and judgment. Plaintiff concluded that "as a direct and proximate result of [defendants'] negligent appointment[,] designation[,] supervision[,] and retention of [d]efendant Patrice Hookfin as a group leader and supervisor of minor children church volunteers, [p]laintiffs incurred the damages as alleged herein."

In response to plaintiffs' second, third, and fourth supplemental and amending petitions, WBTS and the Congregation filed peremptory exceptions raising the objections of no cause of action and prescription. Regarding the objection of no cause of action, defendants maintained that the petitions failed to state a cause of action against them for the damages from the sexual assault of F.P. by third parties, as there was no special relationship between defendants and the perpetrator or defendant and F.P. giving rise to such duty alleged in the petitions. Defendants also maintained that there were no allegations that an agency or employment relationship existed between defendants and Patrice Hookfin, and no cause of action was stated against defendants rendering defendants vicariously liable for the actions of Patrice.

---

[4] Hereinafter, the fourth supplemental and amending petition is referred to as the "fourth petition."

[5] While plaintiffs titled subsequent petitions as supplemental and amending petitions, they are, in fact, amended pleadings. See La. Code Civ. P. art. 1151. Louisiana courts have long acknowledged that the wording used in an amended petition may have the effect of superseding and replacing the allegations in an original petition. State by & through Caldwell v. Teva Pharmaceuticals Industries, Ltd., 2017-0448 (La. App. 1st Cir. 2/8/18), 242 So.3d 597, 604. Here, each subsequent pleading stated that the previous petitions were being amended and supplemented "by recasting their entire Petition to read as follows," which was followed by an entirely new pleading, demonstrating that the amended petitions had the effect of superseding and replacing the allegations in prior petitions.

Further, defendants maintained that there was no viable claim for clergy malpractice, and plaintiffs had no cause of action for failure to report the sexual assault of F.P.[6] Defendants maintained that F.P.'s mother, Mysterie, had no cause of action for bystander damages pursuant to La. Civ. Code art. 2315.6 because there were no allegations that she either viewed the tortious event or came upon the scene of the alleged event soon thereafter. Additionally, defendants submitted that the claims of clergy malpractice asserted in the petitions were prescribed or should be dismissed for plaintiffs' failure to obtain leave of court to assert a new cause of action as required by La. Code Civ. P. art. 1151.

Plaintiffs opposed defendants' exceptions, and the trial court heard the matter on October 13, 2020. After the hearing, the trial court ruled that "all of the exceptions are sustained," specifically finding that the petitions failed to state a cause of action for the clergy relationship claims or bystander damages, and that no special relationship was alleged in the petitions. On November 4, 2020, the trial court issued a judgment granting the peremptory exception raising the objections of no cause of action and prescription filed by WBTS and the Congregation and dismissing all of plaintiffs' claims against these defendants, with prejudice.

From this judgment, plaintiffs appeal and assign as error the following: (1) the trial court erred in granting the peremptory exception raising the objection of no cause of action without considering the multiple facts of the tort claims alleged by plaintiffs; (2) the trial court erred in granting the peremptory exception raising the

---

[6] Plaintiffs allege that defendants failed to report the sexual abuse of F.P. to legal authorities, despite the mandatory reporting requirements found in the Louisiana Children's Code. See La. Ch. Code art. 601, *et seq.* However, plaintiffs fail to allege any damages, a necessary element under the duty-risk analysis, as a result of the failure to report. See **Lemann v. Essen Lane Daiquiris, Inc.**, 2005-1095 (La. 3/10/06), 923 So.2d 627, 632-33.

objection of prescription with no discussion or any oral reasons given;[7] (3) the trial court erred in refusing plaintiffs' counsel equal or adequate time to argue their position;[8] and (4) the trial court erred in not allowing plaintiffs the opportunity to timely amend their fourth petition after granting the exceptions pursuant to La. Code Civ. P. art. 934.

## LAW AND DISCUSSION

The function of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. **Everything on Wheels Subaru, Inc. v. Subaru South, Inc.**, 616 So.2d 1234, 1235 (La. 1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action, and all well-pleaded allegations of fact are accepted by the court as true. **Goodwin v. City of Mandeville**, 2018-1118 (La. App. 1st Cir. 5/31/19), 277 So.3d 822, 827, writ denied, 2019-01083 (La. 10/8/19). See also La. Code Civ. P. art. 931. Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action. **Scheffler v. Adams and Reese, LLP**, 2006-1774 (La. 2/22/07) 950 So.2d 641, 646-47.

---

[7] We decline to address plaintiffs' second assignment of error. While plaintiffs raised as error the failure of the trial court to give oral reasons, plaintiff failed to brief this issue. All assignments of error and issues for review must be briefed, and an appellate court may consider as abandoned any assigned error or issue for review that has not been briefed. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4(B)(4). Moreover, we note that there is no mandate for the trial court to provide written or verbal detailed reasons, and plaintiffs could have requested reasons pursuant to La. Code Civ. P. art. 1917(A). See **State in Interest of A.L.D.**, 2018-1271 (La. 1/30/19), 263 So.3d 860, 870.

[8] Plaintiffs' third assignment of error is without merit. Louisiana Code of Civil Procedure article 1631(A) provides that the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial so that justice is done." The trial court has great discretion in the manner in which proceedings are conducted before this court, and it is only upon a showing of a gross abuse of discretion that appellate courts have intervened. **Thomas v. Department of Wildlife & Fisheries**, 2018-0869 (La. App. 1st Cir. 10/2/19), 289 So.3d 579, 598, writ denied, 2019-01767 (La. 1/14/20), 291 So.3d 687. We cannot say that the trial court abused its vast discretion in its handling of oral arguments.

The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. **City of New Orleans v. Board of Directors of Louisiana State Museum**, 98-1170 (La. 3/2/99), 739 So.2d 748, 755. In reviewing a trial court's ruling sustaining an exception of no cause of action, an appellate court should subject the case to *de novo* review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. **Fink v. Bryant**, 2001-0987 (La. 11/28/01), 801 So.2d 346, 349. The pertinent inquiry is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief. **Scheffler**, 950 So.2d at 647. When a petition states a cause of action as to any ground or portion of the demand, an exception raising the objection of no cause of action must be overruled. Thus, if the petition sets forth a cause of action, none of the other causes of action may be dismissed based on an exception pleading the objection of no cause of action. **Copeland v. Treasure Chest Casino, L.L.C.**, 2001-1122 (La. App. 1st Cir. 6/21/02), 822 So.2d 68, 70.

In support of the exception asserting the objection of no cause of action, defendants argued that plaintiffs, again, failed to state a cause of action against them for F.P.'s damages resulting from the sexual assault committed by third parties or from the tortious actions of Patrice. Defendants argued that plaintiffs' petitions lacked factual allegations that could establish any special relationship between defendants and plaintiffs; the existence of any agency or employment relationship between defendants and Patrice; any claim against the defendants for "clergy malpractice"; or any claims for bystander damages.

*Special Relationship*

The threshold issue in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. Whether a duty is owed is a question of law, which involves a determination of whether the duty the defendant allegedly breached extends to the

9

risk of harm suffered by the plaintiff. A defendant's duty may arise out of a legal or conventional relationship with the plaintiff. **Haynes Interests, LLC v. Garney Companies, Inc.**, 2019-0723 (La. App. 1st Cir. 2/26/21), 322 So.3d 292, 303, writ denied, 2021-00451 (La. 5/25/21), 316 So.3d 447.

Louisiana law is clear that there is no duty to protect against or control the actions of a third party that causes physical injury to another unless a special relationship exists to give rise to such a duty. **Blacklege v. Font**, 2006-1092 (La. App. 1st Cir. 3/23/07), 960 So.2d 99, 103; see also **Harris v. Pizza Hut of Louisiana, Inc.**, 455 So.2d 1364, 1368 (La. 1984). Courts traditionally have found such relationships to exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restaurateur and patron; jailer and prisoner; and teacher and pupil. **Blacklege**, 960 So.2d at 103. When a person undertakes control and supervision of a child, he is not an insurer of the safety of the child. Rather, he is required to use reasonable care commensurate with the reasonably foreseeable risk of harm to which the child might be subjected while under his control and supervision. **Gordon v. Cornerstone Assembly of God Church**, 2007-1488 (La. App. 1st Cir. 3/26/08), 985 So.2d 762, 765.

The fourth petition[9] contains conclusory allegations that defendants were in a "special relationship" with plaintiffs and also alleges that Patrice, as an agent or employee of defendants, was in a "special relationship" with plaintiffs. However, the fourth petition lacks factual allegations supporting any special relationship between defendants and plaintiffs that would impose a duty on defendants to protect F.P. from the criminal actions of third parties or from the tortious actions of Patrice and fails to allege facts supporting the allegations that Patrice was an employee or agent of defendants, as discussed *infra*. See **Scheffler**, 950 So.2d at 647.

---

[9] As noted previously, all of plaintiffs' supplemental and amended petitions were amended pleadings, which had the effect of superseding and replacing the allegations in the prior petition. See La. Code Civ. P. art. 1151; **Caldwell**, 242 So.3d at 604.

10

According to the fourth petition, Patrice's mother, Margaret Hookfin, was designated a "Regular Pioneer" by the Congregation, which indicated that Margaret exhibited exemplary personal conduct. As a Regular Pioneer, Margaret hosted bible studies conducted by the elders in her home. Plaintiffs were assigned by the Congregation to attend and to meet at Margaret's home for all bible studies and field service activities. Additionally, Congregation elders, Frank Boley, Timothy Brown, and Paul Wood, as well as other leaders, generally encouraged plaintiffs and other members of the Congregation to distribute religious materials in the community.

Plaintiffs make a general allegation that, "[t]hrough its hierarchical structure, [defendants] assume complete responsibility for the development, protection and discipline of its membership, especially the children of members."[10] Further, plaintiffs allege that defendants "authorize male members to develop relationships of trust with women, children and families and to assume the role of counselor and advocate for any problems that might arise, including claims of child abuse." It is also alleged that assault victims and accusers are prohibited from warning others or speaking of assault. Yet, these allegations alone do not set forth facts sufficient to establish a duty owed by these defendants to these plaintiffs to protect F.P. from the criminal acts of third parties.

In late May of 2003, Boley and other leaders suggested that F.P. accompany Patrice on a mission to distribute religious materials. F.P.'s parents felt comfortable in allowing F.P. to be in Patrice's custody based on the recommendation and urging of the Congregation's leaders (termed "agents" in the fourth petition) and the fact that Patrice's mother was a Regular Pioneer. There are no allegations in the fourth petition that Patrice held any specific status within the Congregation or that she held

---

[10] Plaintiffs also allege that the WBTS organization has a hierarchical structure with the governing body at the top of a strict chain-of-command, extending over each individual entity in the organization. Authority for any actions by the organization and the members derive from the governing body. According to the fourth petition, the governing body is a small group of men who operate out of various entities within the hierarchical structure.

any position within defendants' hierarchy; rather, plaintiffs only allege that Patrice was a "group leader and supervisor of minor church volunteers" without providing any allegations as to what her alleged role entailed.

Notwithstanding the additional allegations in the fourth petition attempting to set forth a special relationship between defendants and F.P., all of the petitions have clearly stated that it was Patrice who requested that F.P. be allowed to visit overnight. While it was later alleged that Patrice requested the overnight stay with her mother's approval so that the girls could get an early start the next morning distributing the religious literature, there are no allegations that the Congregation approved or was otherwise involved in the decision to allow Patrice and F.P. to visit overnight or that the Congregation required that F.P. stay overnight with Patrice. The fourth petition only alleges that Boley and other leaders suggested that F.P. accompany Patrice on a mission to distribute religious materials. Moreover, the sexual assault of F.P. did not occur during or as a result of the mission or any activity directed or suggested by defendants. Rather, the assault occurred the night before the mission at the home of a third party, who was not alleged to be related to or associated with defendants.

The fourth petition fails to allege that defendants undertook control and supervision of F.P. during the relevant time period such that a duty of reasonable supervision could be imposed and fails to set forth any foundation that could impose any duty on defendants to protect F.P. from the criminal actions of third parties. See **Gordon**, 985 So.2d at 765; **Blackledge**, 960 So.2d at 103. Additionally, nothing in the fourth petition sets forth any factual allegations that the sexual assault of F.P. the night before the mission was reasonably foreseeable by defendants. See **Todd v. State, Through Department of Social Services, Office of Community Services**, 96-3090 (La. 9/9/97), 699 So.2d 35, 39.

12

*Employment/Agency Relationship*

In the fourth petition, plaintiffs asserted new allegations that Patrice was an agent or employee of defendants. Plaintiffs alleged defendants were negligent in their "appointment[,] designation[,] supervision[,] and retention" of Patrice as a group leader and supervisor of minor church volunteers, causing plaintiffs harm. Plaintiffs further alleged that defendants and Patrice, as their agent and employee, were in a special relationship with plaintiffs, requiring them to "utilize a higher standard of care to avoid harm to a minor child and congregation member, particularly one who is acting as a volunteer to publicly solicit potential members and financial contributions for [defendants]."[11]

According to the fourth petition, defendants had a "general duty to conduct a reasonable background check on any potential employee, agent, or group leader before appointing that person and entrusting her to supervise minor children." Without stating what would have been found had a background check been conducted on Patrice, plaintiffs allege that defendants should not have appointed or designated Patrice to be responsible for minor church members and volunteers.[12] Plaintiffs also allege that defendants are vicariously liable for the torts of Patrice and that all of the tortious conduct of Patrice was done in the course and scope of her agency, appointment, and/or employment with defendants.

Pursuant to La. Civ. Code art. 2320, masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the

---

[11] Despite the allegation that defendants were obliged to protect F.P., a minor and a volunteer that went out to publicly solicit members and financial contributions, the sexual assault did not occur during the time in which F.P. was volunteering and did not occur as a result of the public solicitation of members and financial contributions for the Congregation.

[12] Essentially, plaintiffs attempt to advance the theory of negligent hiring or retention of Patrice, which theory presupposes that Patrice was, in fact, an employee or other servant of defendants. Negligent hiring or retention is a claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee. **Taylor v. Home Depot USA, Inc.**, 2012-1587 (La. App. 1st Cir. 8/9/13), 2013 WL 4039945, *3 (unpublished), writ denied, 2013-2164 (La. 11/22/13), 126 So.3d 489 (citing **Griffin v. Kmart Corp.**, 2000-1334 (La. App. 5th Cir. 11/28/00); 776 So.2d 1226, 1231).

function in which they are employed. However, a principal is not liable for the physical torts of a non-servant agent. **Whetstone v. Dixon**, 616 So.2d 764, 770 (La. App. 1st Cir. 1993), writs denied, 623 So.2d 1333 (La. 1993) (citing **Blanchard v. Ogima**, 253 La. 34, 46, 215 So.2d 902, 906 (La. 1968)). The determination of whether a party may be held vicariously liable for the torts of another depends on whether the tortfeasor is characterized as a servant. **Id.** at 770.

A servant is defined as one employed to perform services in the affairs of another and who is subject to the other's control or right to control with respect to the physical conduct in the performance of the services. **Id.** at 770 (citing **Ermert v. Hartford Insurance Company**, 559 So.2d 467, 476 (La. 1990)). In contrast, a non-servant agent, although a contributor to the business of his master, is not such a part of his master's business that his physical acts and the time to be devoted to the business are subject to control. **Id.** (citing **Blanchard**, 215 So.2d at 907). Plaintiffs allege that Patrice was an employee and an agent of defendants. Notwithstanding, the fourth petition is devoid of any factual allegations demonstrating any of the characteristics attributable to an employee or non-servant agent. See **Scheffler**, 950 So.2d at 647.

Comparatively, in **Whetstone**, 616 So.2d 764, an uncompensated deacon of a church was deemed to be a servant of the church, subjecting the church to vicariously liability for the negligence of the deacon in causing an automobile accident. **Id.** at 770-771. As a member of the Board of Deacons, which was part of the structural hierarchy of the church, the deacon had the responsibility to conduct church services when the pastor was not present and to maintain the church and its premises. At the time of the accident, the church was being remodeled, and the deacon was selected by the Board of Deacons to pick up the necessary materials for the following day's project. While en route to pick up these materials, the accident occurred. **Id.** at 769-70.

In determining that the deacon was a servant of the church, this court evaluated several factors, to wit: (1) uncompensated performer; (2) status within the association; (3) specific mission; (4) intense relationship; (5) control; (6) role of the church in conferring authority and exercising control; and (7) direct benefit to the association. While acknowledging that the deacon was not compensated, this court noted that the existence of an economic relationship was not determinative. Instead, this court focused on the fact that the deacon had special authority and higher responsibilities than regular members of the church. The deacon was also on a specific mission for the church at the time of the accident, which was directly related to his authority and duty as a deacon. There was clear control of the church over the deacon in the Board of Deacons' directive to obtain certain building materials from designated vendors, which provided the church with a direct and immediate economic benefit (having the deacon perform the task in lieu of having the materials commercially delivered). **Id.** at 770-73.

The factors and conditions outlined in **Whetstone** are not present in this case. Patrice is not alleged to have any status within the Congregation. Additionally, it was not alleged that Patrice was on a specific mission of the defendants when the sexual assault of F.P. occurred, and it was not alleged that Patrice's actions had a direct or immediate economic benefit to defendants. There was no directive by defendants that F.P. spend the night with Patrice, and there are no allegations regarding the control defendants may have exercised over Patrice. While the actual church-related mission – to distribute religious literature – was suggested to be done by the Congregation elders, the fourth petition lacks factual allegations indicating that the overnight stay was mandated by the Congregation for its benefit.

We further note that even if the fourth petition set forth sufficient facts to support the allegation that Patrice was an employee or servant of defendants, an employer's liability only extends to the employee's tortious conduct within the

15

course and scope of the employment. **Branstetter v. Rives**, 2016-0376 (La. App. 1st Cir. 12/14/16), 2016 WL 7243645, *3 (unpublished); see also **Baumeister v. Plunkett**, 95-2270 (La. 5/21/96), 673 So.2d 994, 996. As observed by the Louisiana Supreme Court in **Baumeister**, in order for an employer to be vicariously liable for the tortious acts of its employee, the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest. **Baumeister**, 673 So.2d at 996. Plaintiffs only make conclusory allegations that the tortious conduct of Patrice "was done in the course and scope of her employment with [d]efendants." There are no allegations as to what Patrice's duties were as "group leader and supervisor of minor church volunteers." Additionally, the overnight visit arranged by Patrice was, at best, tenuously related to the mission of handing out religious literature, which was not set to occur until the next morning. Accordingly, Patrice's tortious conduct could not be considered so closely connected in time, place, and causation to her "employment" duties as to be regarded as a risk of harm fairly attributable to defendants' business. See **Id**.

Furthermore, the fourth petition also fails to set forth any allegations upon which an agency or fiduciary relationship between Patrice and the Congregation could be based. Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. For a fiduciary duty to exist, there must be a fiduciary relationship between the parties. **Scheffler**, 950 So.2d at 647. Pursuant to La. Civ. Code art. 2989, a mandate is "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." The defining characteristic of a fiduciary relationship, therefore, is the special

relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. **Id.** at 648.

Our courts have recognized that traditional fiduciary relationships exist (whether or not the parties are contractually bound) between real estate brokers/agents and sellers/purchasers, trustees and trusts, financial lenders and borrowers, attorneys and clients, directors and shareholders, executors and estates, public officers and the public, and guardians and wards. See, e.g., **State v. Hagerty**, 251 La. 477, 493, 205 So.2d 369, 375 (1967), cert. denied, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968); **Hughes v. Goodreau**, 2001-2107 (La. App. 1st Cir. 12/31/02), 836 So.2d 649, 663, writ denied, 2003-0232 (La. 4/21/03), 841 So.2d 793. However, in this case, there are no facts pled that would establish a legal relationship between Patrice and the Congregation that would give rise to fiduciary obligations. The fourth petition lacks any allegations regarding the nature of the relationship defendants had with Patrice, and there are also no allegations indicating that defendants conferred any authority on Patrice to transact their affairs.

Plaintiffs have failed to state a cause of action against defendants for the negligence of Patrice, as the fourth petition fails to allege any facts supporting the existence of an employment or agency relationship between defendants and Patrice to render defendants vicariously liable for Patrice's alleged tortious conduct.

*Negligent Misrepresentations/Fraudulent Concealment*

Plaintiffs attempt to assert claims of negligent misrepresentation by alleging that defendants encouraged activity between F.P. and Patrice and failed to warn plaintiffs of Patrice's poor moral character. See La. Civ. Code arts. 2315 and 2316. As observed by the Louisiana Supreme Court, this state's jurisprudence has limited negligent misrepresentation tort theory to cases in which a contract or fiduciary relationship exists. **Granger v. Christus Health Central Louisiana**, 2012-1892 (La. 6/28/13), 144 So.3d 736, 765. Nevertheless, for a plaintiff to recover for

17

negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff caused by the breach. **Riedel v. Fenasci**, 2018-0539 (La. App. 1st Cir. 12/28/18), 270 So.3d 795, 801-02.

Plaintiffs also attempt to assert the claim of fraudulent concealment. See La. Civ. Code art. 1953. In order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information as well as the intent to deceive. **Terrebonne Concrete, LLC v. CEC Enterprises, LLC**, 2011-0072 (La. App. 1st Cir. 8/17/11), 76 So.3d 502, 509, writ denied, 2011-2021 (La. 11/18/11), 75 So.3d 464. It has long been held that the duty to disclose exists where the parties stand in some confidential or fiduciary relation to one another. **Louisiana State University System Research & Technology Foundation v. Qyntessa Biologics, L.L.C.**, 2014-0311 (La. App. 1st Cir. 12/12/14), 168 So.3d 468, 474 (citing **Bunge Corporation v. GATX Corporation**, 557 So.2d 1376, 1383-84 (La. 1990)). Although not every contractual relationship involves a fiduciary relationship, the defining characteristic of the latter is a special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. **Id.** at 474.

Plaintiff alleges that defendants knew of existing problems with Patrice, that defendants knew Patrice was a "predator" who sought out people who were having problems, and that defendants failed to warn plaintiffs about Patrice. There are no further allegations as to what being a "predator" meant or what, specifically, the defendants knew was problematic about Patrice. However, none of the allegations of the fourth petition set forth any facts that would establish a legal duty on the part of defendants to supply information about Patrice, and there are no allegations demonstrating a fiduciary relationship between Patrice and defendants, as detailed above.

18

Moreover, there are no factual allegations asserted by plaintiffs upon which a duty to speak or supply information can be imposed on defendants, and there are no allegations that defendants intended to deceive plaintiffs. The fourth petition lacks allegations that any contractual or fiduciary relationships existed among plaintiffs and defendants, requiring the disclosure of correct information about Patrice. See **Riedel**, 270 So.3d at 801-02. While multiple allegations stated the parties were in a "special relationship," legal conclusions unsupported by factual allegations do not set forth a cause of action. See **Scheffler**, 950 So.2d at 647.

*Bystander Damages*

Plaintiffs set forth allegations relating to Mysterie's claims for bystander damages pursuant to La. Civ. Code art. 2315.6. Louisiana Civil Code article 2315.6 provides, in pertinent part, as follows:

> A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
>
> ....
>
> (2) The father and mother of the injured person, or either of them.
>
> ....
>
> B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

While Mysterie, as F.P.'s mother, could bring a claim for bystander damages, the allegations of the fourth petition fail to state a cause of action for bystander damages.

One of the required elements under La. Civ. Code art. 2315.6 is that the plaintiff must either view the accident or come upon the accident scene soon after it has occurred and before any substantial change has taken place in the victim's condition. **Veroline v. Priority One EMS**, 2009-1040 (La. 10/9/09), 18 So.3d

19

1273, 1275-76 (per curiam). However, the fourth petition alleges that "what had happened to her 13-years old daughter[] first became clear, on that afternoon of May 24, 2003 when F.P. returned home and recovered enough from the alcohol and/or drugs to realize what had truly happened to her...." Therefore, Mysterie, who did not see her daughter until the afternoon of May 24, 2003, did not actually view or come upon the "accident" soon after it occurred, as the sexual assault took place the night before on May 23, 2003. Plaintiffs cannot satisfy the temporal proximity requirement of La. Civ. Code art. 2315.6 and fail to state a cause of action for bystander damages.

*"Clergy Malpractice"*

In plaintiffs' third and fourth amending petitions, new allegations were made concerning the defendants' actions subsequent to the sexual assault. F.P.'s parents reported the incident to the Congregation's elders, and thereafter, a judicial committee composed of elders was formed. A hearing was later conducted in which only F.P. and her father were permitted to participate. Mysterie was not allowed to participate, and none of the elders would speak to her about the proceedings. (3:527 ¶31). As a result of the hearing, Patrice was "disfellowshipped," and the judicial committee voted to publicly reprove[13] F.P. (3:527 ¶¶32-33).

It was alleged that the hearing and testimony taken were to be kept confidential, but plaintiffs maintained that the details of the incident became widely known among the members of the Congregation. Plaintiffs implied that one of the elders may have breached this confidentiality, alleging that the wife of an elder asked F.P. if she thought she might be pregnant as a result of the sexual assault. (3:527 ¶34). Due to the public reproval and the release of details of the sexual assault, both F.P. and Mysterie were shocked, embarrassed, and suffered severe emotional

---

[13] According to plaintiffs' allegations, the public reproval was the public announcement in front of the members of the Congregation that F.P. had been reproved by the judicial committee.

distress. They "lost all of their friends in the congregation, who immediately shunned and ostracized them after the 'public reproval.'" (3:527-28 ¶35). Plaintiffs left the Congregation shortly thereafter. (3:528 ¶35).

Plaintiffs' claims against defendants as a result of their actions related to the judicial committee hearing and public reproval are not apparent. Plaintiffs' opposition to defendants' exceptions as well as the brief filed with this court provide little insight into the theory of the claims advanced. However, we pretermit any determination as to whether plaintiffs stated a cause of action for "clergy malpractice" or otherwise, as we find that these claims are prescribed.

In addition to the peremptory exception raising the objection of no cause of action, defendants raised the objection of prescription as to plaintiffs' claims for clergy malpractice in the trial court. Ordinarily, the party pleading the exception of prescription bears the burden of proving the claim has prescribed. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. **Illes v. State ex rel. Division of Administration**, 2014-0689 (La. App. 1st Cir. 12/23/14), 168 So.3d 646, 648, writ denied, 2015-0134 (La. 4/10/15), 163 So.3d 813.

Delictual actions are subject to liberative prescription of one year commencing from the day of injury or the day damage is sustained. La. Civ. Code art. 3492. Prescription runs against all persons unless they fall within an exception provided by law. La. Civ. Code art. 3467. One such exception is found in La. Code Civ. P. art. 1153, allowing an amended petition to relate back to the date of filing the original pleading. See **Gallagher Bassett Services, Inc. v. Canal Insurance Co.**, 2016-0088 (La. App. 1st Cir. 9/16/16), 202 So.3d 1160, 1164, writ denied, 2016-1860 (La. 12/5/16), 213 So.3d 392.

Before the first petition was filed on May 21, 2004, the Congregation had already reproved F.P., causing Mysterie and F.P. to leave the Congregation. The

claims for clergy malpractice were not asserted until 2017 in the third and fourth amending petitions. In order for a cause of action asserted in an amended petition to relate back to the date of filing of the original petition, the cause of action must arise out of the conduct, transaction, or occurrence set forth in the original petition La. Code Civ. P. art. 1153. Entirely new and distinct causes of action, which do not arise out of the conduct asserted in the original petition, do not relate back to the original petition. **Lee v. Sapp**, 2018-0828 (La. App. 4th Cir. 2/20/19), 265 So.3d 898, 902, writ denied, 2019-0484 (La. 5/20/19), 271 So.3d 198; see generally **Illes**, 168 So.3d at 649. Furthermore, a new and expanded cause of action cannot relate back to the filing of the original petition. See **Lynn v. Berg Mechanical, Inc.**, 582 So.2d 902, 909 (La. App. 2d Cir. 1991). Plaintiffs' clergy malpractice claims stem from the Congregation's actions following the May 23, 2003 incident, which included the reproval of F.P., not from the alleged actions and inactions of the Congregation leading up to and including the May 23, 2003 incident. Therefore, we find plaintiffs' claims for clergy malpractice are prescribed, and affirm the trial court's ruling sustaining the peremptory exception raising the objection of prescription.

We have reviewed the fourth petition and have gleaned every possible cause of action therefrom; however, plaintiffs' fourth petition does not contain factual allegations sufficient to state any cause of action against defendants. See **Scheffler**, 950 So.2d at 647. Accordingly, plaintiffs' first assignment of error is without merit.

*Amendment of Petition*

Plaintiffs assign as error the failure of the trial court to provide them the opportunity to amend the petition to state a cause of action against defendants in violation of La. Code Civ. P. art. 934. Pursuant to La. Code Civ. P. art. 934, when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such

22

amendment within the delay allowed by the court. If the grounds of the objection cannot be removed, the action, claim, demand, issue, or theory shall be dismissed.

However, the right to amend a petition following the sustaining of a peremptory exception is not absolute. **Palowsky v. Cork,** 2019-0148 (La. App. 1st Cir. 5/20/20), 304 So.3d 867, 875. Louisiana Code of Civil Procedure article 934 does not require that the plaintiff be provided the opportunity to speculate on unwarranted facts merely for the purpose of defeating the exception. The right to amend one's petition is qualified by the restriction that the objections to the petition be curable. The decision to allow amendment of a pleading to cure the grounds for a peremptory exception is within the discretion of the trial court. **Id.** at 875.

In this case, plaintiffs were given multiple opportunities to amend their petitions in order to state a cause of action against defendants – first, when the trial court partially granted defendants' exception asserting the objection of no cause of action as to plaintiffs' claims for bystander damages and again when this court granted defendants' exception asserting the objection of no cause of action as to plaintiffs' remaining claims for negligence. See **Price**, 2017 WL 2303595, at *1. In no less than four petitions involving defendants, plaintiffs have not yet articulated sufficient facts so as to state any cognizable claim against defendants. Accordingly, we find no abuse of discretion in the trial court's decision not to permit plaintiffs to amend the fourth petition. Plaintiffs' fourth assignment of error is without merit.

## CONCLUSION

In light of the foregoing, we affirm the trial court's November 4, 2020 judgment, which granted the peremptory exception asserting the objections of no cause of action and prescription filed by defendants, Watchtower Bible & Tract Society of New York, Inc. and Jones Creek Congregation of Jehovah's Witnesses, Baton Rouge, LA, Inc. (f/k/a Sherwood Forest Congregation of Jehovah's Witnesses), and dismissed all of plaintiffs', F.P. and Mysterie Price's, claims against

defendants, with prejudice and at their cost. All costs of this appeal are assessed to plaintiffs, F.P. and Mysterie Price.

**AFFIRMED.**