254 So.2d 470 (1971)
Earl BALTZAR, Plaintiff-Appellant,
v.
Osborne WILLIAMS et al., Defendants-Appellees.
No. 3676.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1971.
*471 Shapiro & Shapiro, by Alfred B. Shapiro, Alexandria, for plaintiff-appellant.
Gold, Hall, Hammill & Little, by James D. Davis, Alexandria, Stafford, Pitts & Bolen, by Grove Stafford, Jr., Alexandria, for defendants-appellees.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
FRUGÉ, Judge.
This is an appeal from a summary judgment. The plaintiff-appellant is Earl Baltzar, who alleged that he was injured during an illegal arrest by a firearm wielded by Osborne Williams, a deputy town marshal for the City of Glenmora, on the evening of the 20th of December 1969. Defendants are Osborne Williams, in his capacity as deputy town marshal for the Town of Glenmora and as deputy sheriff of Rapides Parish, Interstate Fire & Casualty Company, the insurer of the Rapides Parish Sheriff's Department, and Travelers Insurance Company, the insurer of the Town of Glenmora. The trial court sustained a motion for a summary judgment made by defendant Travelers Insurance Company on the terms of the policy. We reverse and remand.
The only issue presented in this appeal is: Does this policy of insurance, issued by Travelers Insurance Company to the Town of Glenmora, exclude coverage of intentional wrongful acts committed by employees of the town?
As an employer, one of the town's primary concerns is to protect itself from any vicarious liability from the accidents of its employees. The question of coverage was raised by the Travelers Insurance Company, who urges that under the terms of the policy when an employee of the town causes injury to another by an intentional act, the town is precluded from qualifying for liability coverage under the policy.
The policy issued to the Town of Glenmora is entitled, "Manufacturers' and Contractors' Liability Insurance Policy." The primary insuring language of the policy states as follows:
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
Coverage ABodily injury, or
Coverage BProperty damage to which this insurance applies, caused by an occurrence, * * *."
The named insured in the policy is the Town of Glenmora. There is no other provision in the policy through which an employee of the town would be considered as the insured.
*472 Obviously, the above language is broad enough to include the events sued upon in this case. There is no specific exclusion in the policy which would limit coverage in this situation. However, a problem is presented in the section entitled, "Definitions." In that section, the word "occurrence" is defined as follows:
"`Occurrence' means an accident including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
Since the town is insured in this instance, the determination of whether or not the shooting was an accident must be interpreted from the standpoint of the Town of Glenmora. The answer to this question is almost obvious, in that the Town of Glenmora did not intend or expect that its deputy would commit an intentional, violent act upon a citizen. In a normal course of events, the town only expected that its employee would render services to the town as deputy town marshal by keeping the peace by whatever means necessary, short of violent use of force. This conclusion is reinforced by the fact that on this particular night the town had on duty two town deputies, which should have considerably reduced any requirement of force upon the part of one officer to make an arrest. We conclude that the shooting in this particular case was an accident, neither expected nor intended by the Town of Glenmora. Hence, the Town of Glenmora has coverage under the policy for any judgment which it may sustain resulting from the shooting.
In Hardee v. Southern Farm Bureau Casualty Ins. Co., 127 So.2d 220, we stated the rules applicable to interpretation of the polices as follows:
"In case of ambiguity, the policy provisions are construed most favorably to the insured and against the insurer, and of the permissible constructions that will be adopted which effectuates the insurance over that which defeats it. * * * On the other hand, in the absence of conflict with statute or public policy, insurers have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, and in such event unambiguous provisions limiting liability must be given effect."
Assuming en arguendo that the town did expect but did not intend the consequence of a shooting in this particular case, there are a number of cases rendered in this state that sets forth the firm jurisprudential rule based upon public policy that an insurer of an employer can be liable for intentional acts of its employees. Knight v. L. H. Bossier, Inc., 118 So.2d 700 (La.App. 1st Cir., 1960); Rivers v. Brown, 168 So.2d 400 (La.App. 3rd Cir., 1964); Barringer v. Employer's Mutual Liability Ins. Co., 62 So.2d 173 (La.App. 2nd Cir., 1952); Jernigan v. Allstate Insurance Co., 269 F.2d 353, rehearing 272 F.2d 857, 5th Cir., 1969. Also see: Western Casualty & Surety Co. v. Aponaug Mfg. Co., 197 F.2d 673, 5th Cir. 1952.
It is an elementary principle of public policy that no person can insure against his own intentional acts. However, an employer must be given the opportunity to protect himself against harm to any unknown victims who might be endangered through the activity in which the employer is engaged. Frequently, the nature of the activity will require that employees be in a position that their presence will result in the danger of intentional harm to innocent persons.
None of the cases above present the exact same policy language that is presented in this case; they all involved interpreting the word "accident" rather than "occurrence." However, we are of the opinion that those cases do stand for a rule in this jurisdiction in favor of giving coverage to an employer for intentional acts committed by the employee. Those cases have strived to set forth the test of *473 coverage, whereas coverage must be viewed from the position of the party injured. For that reason, we must consider the language "neither expected nor intended from the standpoint of the insured" in the definition of surplusage. We think it is settled law of this jurisdiction that in every contract of insurance where there is not a specific exclusion and a resulting intelligent waiver by the employer, an insurance policy of this type must be construed to provide coverage to the insured, the employer, for intentional acts of the employee.
For the foregoing reasons, the judgment appealed from is reversed and remanded. Costs of this appeal are to be paid by Travelers Insurance Company, defendant-appellee. All other costs are to await the final disposition of these proceedings.
Reversed and remanded.