307 So.2d 125 (1974)
Mrs. Mary KIPP
v.
Jimmy HURDLE and Mrs. Helen R. Hurdle.
No. 10052.
Court of Appeal of Louisiana, First Circuit.
December 16, 1974.
Rehearing Denied February 10, 1975.
Writ Refused April 11, 1975.
*126 Robert J. Vandaworker, Baton Rouge, for defendant-appellant La. Farm Bureau Ins. Co.
Samuel C. Cashio, Maringouin, for defendant-appellee.
Ralph W. Brewer, Baton Rouge, for plaintiff-appellee.
Before LOTTINGER and COVINGTON, JJ., and BAILES, J. Pro Tem.
*127 BAILES, Judge Pro Tem.
Plaintiff brought suit against Jimmy Hurdle, his wife, Mrs. Helen R. Hurdle and Mr. Hurdle's personal liability insurer, Louisiana Farm Bureau Mutual Insurance Company (Insurer), to recover damages for injuries sustained by her when attacked by Mrs. Hurdle. The trial court awarded plaintiff damages in the amount of $6,357.50, which included special damages amounting to $857.50, against Mrs. Hurdle and the insurer, in solido. Mrs. Hurdle took a devolutive appeal, while the insurer perfected a suspensive appeal. Plaintiff has answered the appeal.
We reverse the judgment against the insurer, and affirm as to Mrs. Hurdle.
The facts giving rise to this litigation are simple, brief and without material dispute.
On Sunday afternoon, April 18, 1971, the plaintiff and a female friend, both in their fifties, were patrons of the Crocodile Inn in West Baton Rouge Parish. The time was between seven and eight o'clock in the evening. These two ladies were seated at the bar drinking a beer and enjoying the music of the dance band. During a brief cessation of music, Mr. Hurdle, a stranger to the plaintiff, asked her to dance with him. Plaintiff assented, and both made their way to the dance floor situated close to the entrance of the establishment.
The band began to play again as Hurdle and plaintiff reached the dance floor. At this time and while Mr. Hurdle had his back to the front door his wife entered the lounge in a rage and barefooted. She walked over to the rear of her husband, grabbed his arm, spun him around and slapped his face. Then she grabbed the plaintiff by the hair of the head and shoved her to the floor. The plaintiff hit the floor in a sitting position. While standing over the plaintiff, Mrs. Hurdle asked her if she had had enough and if she was having a good time. Upon comprehending the events which had just transpired, Mr. Hurdle took charge of his wife, removed her from the premises and escorted her home.
Mrs. Hurdle testified that she did not want her husband to go to the Crocodile Inn, nor did she want him dancing with any woman. Her behavior on this occasion convinces us of her avowed attitude. She freely admitted, while testifying, that she intended to do what she had done, that she intended to interrupt the dance, to separate her husband from his dance partner and to throw the plaintiff to the floor. However, she did deny that she intended to injure the plaintiff. Even so, it is presumed that she intended the consequences of her aggressive action.
Plaintiff was in immediate pain and emotional distress as a result of the unprovoked and unforewarned attack. She was administered to at the scene. About an hour later she had sufficiently regained her composure and calm to drive her automobile home.
Although Mrs. Hurdle denied that she was looking for her husband when she came upon his parked vehicle at the Crocodile Inn, her actions upon entering the lounge demonstrates the contrary. The evidence shows that Mr. Hurdle had been in Rosedale drinking and playing cards since that Sunday morning, that he had not gone home for dinner nor had his wife heard from him all day. We believe appellant entered the bar for the purpose of breaking up whatever activity she found her husband engaged in and of bringing him home. In the pursuit of this activity, she was neither the express nor implied agent of her husband.
In denying recovery against Mr. Hurdle, the trial court applied the general rule that a husband is not liable for the torts of his wife, unless the tortious conduct was in furtherance of a community mission, or was committed with the express or implied consent of the husband. This is the rule of law laid down and followed in Hart v. Hardgrave, 103 So.2d 910 (La. *128 App., 2nd Cir., 1958); Galle v. Ingraham, 140 So.2d 741 (La.App., 4th Cir., 1962); and Bradford v. Brown, 199 So.2d 414 (La.App., 1st Cir., 1967). We need not further consider this phase of the case, that is, the trial court's ruling that Mr. Hurdle was not liable or its judgment in favor of Mr. Hurdle for the reason that Mr. Hurdle did not appeal the judgment in his favor, and the plaintiff's answer to the appeal does not bring this issue before us.
In casting the insurer in judgment, the trial court stated:

"Insurance Coverage
"Louisiana Farm Bureau Mutual Insurance Company denies coverage by virtue of an exclusionary clause which provides that the policy does not apply to `bodily injury . . . which is either expected or intended from the standpoint of the insured.' Counsel for the insurance company has cited a number of cases applying this exclusionary clause, but they all deal with a situation in which the intentional tort is committed by the named insured.
"Plaintiff here contends that the exclusion applies only to intentional torts committed by the named insured, and therefore intentional torts committed by an omnibus insured are covered by the liability insurance provisions of the policy. (Mrs. Hurdle is an omnibus insured as the `spouse' of the named insured.) Plaintiff cites the cases of Barringer v. Employer's Mutual Liability Insurance Company, [La.App.,] 62 So.2d 173 and Rivers v. Brown, [La.App.,] 168 So.2d 400, interpreting a somewhat similar clause which excluded assault and battery `committed by or at the direction of the insured.' The courts held that the clause applied only to acts committed by or at the direction of the named insured. (1)
"The reason given in both the Barringer case and the Rivers case is that to hold the exclusionary clause applies to an omnibus insured would deprive the named insured of his insurance protection against vicarious liability for the wrongful acts of such omnibus insureds.
"Had we found Jimmy Hurdle vicariously liable for the tort of his spouse, the rule of those cases would unquestionably apply also to this case.
"In the Rivers case the insurance company was held liable.
"In the Barringer case cited above, the insurance company escaped liability because there was no coverage for torts committed by an omnibus insured beyond the scope and course of his employment. In the present case coverage is extended to the omnibus insured without reference to any vicarious liability on the part of the named insured. She is covered because she is the named insured's spouse, and the insurance company can escape liability only if the exclusionary clause is interpreted to apply to the omnibus insured as well as the named insured.
"The clause is susceptible of more than one interpretation. It is vague and indefinite and therefore must be construed against the insurer. Brasseaux v. Girouard, [La.App.,] 269 So.2d 590. The word `insured' in this clause must mean, as it did in the Barringer and Rivers cases, the named insured. If the word is considered to include all the omnibus insureds, then the named insured would have no insurance protection against vicarious liability for the intentional torts of his children (also made omnibus insured). It may be argued that we are not here concerned with the intentional torts of a minor, but we must consider what all the effects of an interpretation will be if there is to be any consistency in the meaning of the clause in question, and although there would be no vicarious liability of the named insured in the case at bar, the interpretation of such a word in identical context cannot be so indefinite as to bear a difference meaning in each case.

*129 "(1) NOTE: Baltzar v. Williams, [La. App.,] 254 So.2d 470, reached the same conclusion, but there was no serious question in that case as to the meaning of the word `insured,' as the policy contained no provision whereby the offending employees could be considered an omnibus insured."
The clause in the insurance policy issued by the insurer to Hurdle under scrutiny by the trial court reads as follows:
"Exclusions
"This policy does not apply:
1. Under Coverage EPersonal Liability * * *;
f. to bodily injury or property damage which is either expected or intended from the standpoint of the insured."
Under the General Conditions of the policy in paragraph 8Definitions: the insured is defined to mean
"A. `Insured' means
(1) the Named Insured stated in the Declarations of this policy;
(2) if residents of the Named Insured's household, his spouse, the relatives of either, * * *."
We are unable to agree with the trial court that there exists any ambiguity whatever in this policy. The policy plainly, simply and unequivocally states that it does not cover personal liability arising from a bodily injury either expected or intended by the insured. There is complete clarity in defining the person designated as the insured. Mrs. Hurdle, as the spouse living in the household of the named insured is an "insured" within the terms of the policy.
It is clear that this policy, by its terms, does not cover vicarious liability as such. There is no "omnibus clause" and there are no "omnibus insureds" under the policy issued to Hurdle. These terms are used in discussing liability arising ordinarily from the use of a motor vehicle with the permission of the named insured, or vicarious liability imposed on some other person or organization because of fault of the named insured or a driver operating the vehicle with permission of named insured. Such has no application to the type policy under consideration herein.
Both the Barringer and Rivers cases had under consideration a liability policy covering vehicles and the use thereof by employees of the named insureds. In Barringer, the court found plaintiff's status as a passenger in the insured's taxi cab had ceased and that the assault and battery was committed on plaintiff by the driver of the taxi cab thereafter, therefore the prerequisite of coverage, i. e., such assault and battery had to be committed within the scope of the driver's authority, did not exist. Whereas in the Rivers case the policy provided that an assault and battery would be deemed an accident unless committed by or at the direction of the insured. The court held that though the person who committed the assault was president, principal stockholder and superintendent of construction for the named insured on the liability policy, the assault was not committed "by or at the direction of the insured" within the above quoted exclusionary clause of the policy, and consequently there was coverage. Neither the Barringer nor the Rivers case has application to the instant case.
There is no policy terminology which justifies our finding that this exclusion of bodily injury which is either expected or intended from the standpoint of the insured applies only to the named insured.
In Wigginton v. Lumbermens Mutual Casualty Company, 169 So.2d 170 (La. App., 1st Cir. 1964), this court held the insurer not liable for an intentional tort under a policy which had the following exclusionary clause: "* * * bodily injury or property damage caused intentionally by or at the direction of the insured." Also *130 see: Areaux v. Maenza, 188 So.2d 633 (La.App., 4th Cir. 1966), and Terito v. McAndrew, 246 So.2d 235 (La.App., 1st Cir. 1971).
The trial court relied on the Third Circuit case of Brasseaux v. Girouard, supra, to support its finding that the language of the policy was vague and uncertain. While we are not criticizing the finding of vagueness and uncertainty in the language of the exclusionary clause in that case, we find there is not sufficient information therein for us to determine how that court arrived at its conclusion. After citing Wigginton and Areaux, cited supra, the Third Circuit court merely stated that these cited cases are distinguished from Brasseaux. Then the court stated "We find the language in the exclusion to be vague and uncertain." We cannot follow Brasseaux v. Girouard, supra.
Appellee argues that the exclusionary clause is clear of meaning if "the insured" is the named insured, however ambiguity arises in determining who is "the insured" in the case of vicarious liability. The question of vicarious liability of the husband has been foreclosed by the jurisprudence which clearly holds there is no vicarious liability on the part of the husband for the torts of the wife apart from those set forth in the civil code. There is no law in this state which holds the husband, as such, liable for the tortious conduct of his wife. The policy provision must be considered within the context of the instant facts. These facts completely negate a finding that the wife was acting as agent for her husband or of the community of acquets and gains apparently existing between them.
Thus the instant case is clearly distinguished from the case of Baltzar v. Williams, supra. Therein plaintiff brought suit against the deputy town marshal of Glenmora, Louisiana, for injuries allegedly sustained by him during an alleged illegal arrest. In the policy of liability insurance issued to the Town of Glenmora there was no provision which included the town employees as an insured, and there was no specific exclusion in the policy which would limit coverage in this situation. The sole issue was whether the policy excluded coverage of intentional wrongful acts committed by employees of the town. On the issue of vicarious liability the court found that the town did not intend or expect that its deputy would commit an intentional violent act upon a citizen, and that as to the town it was an accident, neither expected nor intended by the insured town. The court found vicarious liability on the town under an employer-employee relationship and concluded there was coverage within the terms of the policy.
In the absence of any ambiguity, statutory prohibition or public policy conflict, the insurer herein had the right to exclude from the coverage of the contract or limit their liability to exclude intentional torts. The contract is the law between the parties and will be enforced as such. Hardee v. Southern Farm Bureau Casualty Insurance Co., 127 So.2d 220 (La.App., 3rd Cir. 1961).
In her answer to the appeal, plaintiff-appellee contends that the trial court erred in not finding Hurdle solidarily liable with his wife and the insurer, and also that the award of damage is inadequate and should be increased to $55,000.
The question of the liability of defendant, Jimmy Hurdle, for the tortious acts of his wife is settled by the now definitive judgment of the trial court. The only appeal taken herein was the one by Mrs. Hurdle and the one by the insurer. The trial court awarded judgment in favor of Hurdle finding him not liable for the tortious acts of his wife. The answer is directed solely to the perfected appeals of Mrs. Hurdle and the insurer. The question of liability of the husband for the torts of his wife is not germane to the liability of the insurer in the present posture of this appeal.
*131 As to the adequacy of the award of the trial court, we find the amount awarded plaintiff is fair and adequate. We adopt the reasons assigned by the trial court in considering quantum, which is quoted as follows:
"Mrs. Kipp is entitled to the following special damages:

Our Lady of the Lake Hospital $259.50
Baton Rouge Physical
 Therapy Center 150.00
Dr. Richard B. Means 75.00
Dr. James F. Halley 45.00
 _______
 $529.50

"In addition she made a claim for lost earnings. She was earning $2.05 per hour for 40 hours per week. According to her employer she missed 160 hours, but she continued to receive her wages, the lost time having been attributed 80 hours to sick leave and 80 hours to vacation time.
"The defendants contend she should not be reimbursed for lost wages since she did not in fact suffer lost wages. This court does not agree. Vacation pay and sick pay are earned assets with a fixed and determinate value. Sick pay is as valuable an asset as a policy of health insurance and comparable thereto. Vacation pay is also a certain benefit, and a definite part of compensation paid to labor.
"The plaintiff here lost these assets as a result of the tort, and she is entitled to recover for these items. This item of $328 brings her special damages to a total of $857.50.
"The record reveals that the immediate shock, anguish, and pain suffered by Mrs. Kipp at the scene of the sudden attack were very severe.
"She was hospitalized for four days and missed about a month of work.
"She received treatment as an outpatient through May and was treated at the Baton Rouge Physical Therapy Center from June 16 through July 8 with hot packs, ultrasound, diathermy, and intermittent pelvic traction. After she returned to work she still suffered some pain, which however did not prevent her performing her duties. Dr. Richard B. Means, orthopedist, who treated Mrs. Kipp, diagnosed her injuries as a contusion and sprain of the lower back with a possible or questionable fracture of the sacrum. Dr. James F. Halley, orthopedist, who examined Mrs. Kipp months later found that Mrs. Kipp had a crack-type fracture of the first sacral segment which he attributed to the accident. Mrs. Kipp acknowledged on cross-examination that she had been in an accident in 1968 in which she hurt her back, but she testified that x-rays at that time showed no fractures.
"The Court is satisfied that the injuries resulted from the battery committed by Mrs. Hurdle.
"Reviewing the cases cited on the issue of quantumsome of which were disregarded because they described injuries of a more serious nature than the case at bar the Court is of the opinion that the plaintiff is entitled to general damages for her injury and pain and suffering resulting therefrom in the amount of Five thousand, five hundred dollars."
For the foregoing reasons, the judgment appealed is affirmed as to appellant, Mrs. Helen V. Hurdle, and is reversed and dismissed as to defendant, Louisiana Farm Bureau Mutual Insurance Company. Defendant, Mrs. Hurdle, is cast for all court costs.
Reversed in part, affirmed in part, and rendered.