REDMANN, Judge.
Plaintiff was a guest passenger in the automobile of Blanco (insured by American Liberty Assurance Company) when it collided with one driven by Mrs. Bernice Riche and insured by Travelers Insurance Company. The trial judge cast American alone for plaintiff’s damages, rejecting American’s third party demand against Riche and Travelers. American appeals. We reverse as to the third party demand for contribution.
The collision occurred in a supermarket parking lot. Accordingly highway regulatory laws are not applicable; Cavalier v. Peerless Ins. Co., 1964, 246 La. 336, 164 So.2d 347; Chaney v. Brumfield, La.App. 1 Cir. 1976, 333 So.2d 256. Riche entered the lot from a major thoroughfare and passed, on her right, a gasoline-pump area and a single line of cars parked perpendicular to and 68 feet from the lot’s front line and, on her left, three lines of parked cars and an access lane, composed of a single line of cars, parked perpendicular to and at the lot’s front line, followed by a 28-foot wide access lane and then a double line of cars, parked facing each other and also perpendicular to the lot’s front line. The accident occurred either at the next access lane, 85 feet from the street, or (as Riche’s own drawing suggests) the following access lane, 151 feet from the street. In either event, this is not a case of an accident occurring just at the entrance to the lot so that somehow the preferred major thoroughfare status might carry over into the threshold of the parking lot.
The ease is one of a collision at the intersection of two lanes in a parking lot. Blanco’s cross lane was 28 feet and Riche’s entrance lane to Blanco’s right was 40 feet wide (about a third wider). These circumstances, however, do not make the broader entrance lane a superior one in law, even if a driver suppose the wider lane a favored one; Chaney, supra. (In Chaney, the cross-lanes were one-way, presumably narrower than ours.)
Cars were parked beyond the marked spaces into the 40-foot lane on which Riche travelled, and one car was left unattended in the right side of the 28-foot lane in which Blanco travelled. Neither driver saw the other until accident-time, and the Riche car *1254 struck the rear fender of the Blanco car behind the rear wheel.
While we agree that Blanco was at fault in proceeding across Rich’s lane without seeing her, we are unable to agree that Riche was without fault.
Riche testified that Blanco was “traveling fast because he could not bring his car to a stop for quite a few feet after the accident.” The investigating deputy testified he measured the distance of 20 feet from point of impact to Blanco’s rear bumper. Allowing the typical .75-second reaction time, one cannot conclude that Blanco’s speed was so excessive that Riche is blameless for not seeing him, especially since there is no testimony that Blanco left skid marks during his 22- or 23-foot stopping, which would indicate maximum braking and might fix his speed (at slightly over 20 mph). Even at 10 mph, a car travels 11 feet during reaction time, and moderate rather than maximum braking might easily take 11 or 12 feet. If Blanco’s speed were 10 mph (even if still too high), it would have taken him over three seconds to traverse the 40-foot lane of Riche’s travel plus over 3.5 feet past it (as his car’s front end had to be) to bring its rear end to the point of impact. During that three seconds Riche herself had also to travel 43.5 feet at 10 mph — a distance during which she could easily have stopped. Her testimony that she did not see him until a “split second” before impact, when he was completely athwart her path, thus convicts her of contributory fault.
General damages of $6,000 may approach the upper limits of but do not patently exceed the trial judge’s “much discretion” under C.C. 1934(3). Plaintiff’s principal injury was “tennis elbow” (epicondyli-tis), established from subjective complaints. (Diagnosis also included short-lived strains, of the trapezius with brief spasm and of the lower back.)
Defendants argue that plaintiff is not entitled to lost wages because, first, her wages were replaced by sick leave pay and, second, the use of sick leave did not deprive plaintiff of possible future use because plaintiff quit her job and thereby forfeited all remaining sick leave. Defendants take their premise from Kipp v. Hurdle, La.App. 1 Cir. 1975, 307 So.2d 125, writ refused La., 310 So.2d 643, which theorized (quoting the trial judge) that the replacement of lost wages by sick leave (or vacation leave) was itself a loss, in that accumulated sick leave “is as valuable an asset as a policy of health insurance” (as is accumulated vacation leave). We prefer to reason that the collateral source rule makes it immaterial that lost wages have been replaced by sick pay; Reeves v. Gulf States Util. Co., La.App. 1 Cir. 1976, 327 So.2d 671, writs refused, La., 330 So.2d 309, 311. It thus becomes irrelevant that sick leave is later forfeited (and thus would have been lost whether or not the accident had occurred).
Reversed as to third party demand; judgment for contribution of half in favor of American and against Riche and Travelers; otherwise affirmed; all costs to be paid half by American and half by Riche and Travelers.