# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-547**


**CHRISTIAN BLAINE PERKINS**

**VERSUS**

**DUSTY KING, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2020-189
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Connor C. Headrick**
**B. Gene Taylor III**
**Gold, Weems, Bruser, Sues & Rundell**
**2001 MacArthur Drive**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Christian Blaine Perkins**

**Frank M. Walker, Jr.**
**Plauche, Smith & Nieset, LLC**
**1123 Pithon Street**
**Lake Charles, LA 70605**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Louisiana Farm Bureau Mutual Insurance Company**

**Michael H. Schwartzberg**
**Larry A. Roach, Inc.**
**2917 Ryan St.**
**Lake Charles, LA 70601**
**(337) 433-8504**
**COUNSEL FOR DEFENDANTS:**
    **Kyle King**
    **Don King**

**Craig Ray Hill**
**Attorney at Law**
**P. O. Box 1260**
**Oberlin, LA 70655**
**(337) 639-2127**
**COUNSEL FOR DEFENDANT:**
    **Tammie Maricle**

**S. Christie Smith, IV**
**Smith Bush, LLP**
**P.O. Box 1528**
**Leesville, LA 71496**
**(337) 239-2244**
**COUNSEL FOR DEFENDANT:**
    **Danny Willis**

**Charles A. Sam Jones, III**
**Attorney at Law**
**P.O. Box 995**
**DeRidder, La 70634**
**(337) 463-5532**
**COUNSEL FOR DEFENDANTS:**
**Dusty King**
**Kammie King**

**Romelzy Willis, Jr**
**Attorney at Law**
**P. O. Box 1368**
**Oberlin, LA 70655**
**(337) 639-4600**
**COUNSEL FOR DEFENDANT:**
**Jalyn Sumney**

**Chad Guidry**
**Attorney at Law**
**P. O. Box 447**
**Kinder, LA 70648**
**(337) 738-2280**
**COUNSEL FOR DEFENDANT:**
**Sandra Suydan**

**Macy Willis**
**In Proper Person**
**2220 Highway 399**
**Pitkin, LA 70656**
**DEFENDANT:**
**Macy Willis**

**Regan LaFauci**
**In Proper Person**
**3041 Ten Mile Road**
**Pitkin, LA 70656**
**DEFENDANT:**
**Regan LaFauci**

**GREMILLION, Judge.**

Plaintiff-Appellant, Christian Blaine Perkins, appeals the trial court's grant of summary judgment in favor Louisiana Farm Bureau Mutual Insurance Company, the homeowner Defendant-Appellee's insurer, finding that there were no genuine issues of fact that its policy did not provide coverage to Perkins. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Perkins attended a wedding reception at the home of Dusty and Kammie King, Farm Bureau's insureds. There is no dispute that later in the evening, Perkins was beaten by the Kings and seven or more other wedding guests. Perkins managed to initially escape the home on foot but, unfortunately, arrived at the home of Kammie's sister, Regan LaFauci, only to be returned to the Kings' residence by her despite his pleas for help. Dusty King's own deposition testimony is undisputed that Kammie pulled Perkins out of the car and began punching him with her husband and the other guests joining in to punch, kick, and stomp Perkins–Dusty even admitting to biting him–causing Perkins to suffer a broken nose, fractured jaw and right eye socket, and other injuries.

Perkins filed suit against the Kings, the other assailants[1], and the King's insurer, Farm Bureau, in June 2020, alleging:

> 4.
> The Assailants committed the intentional torts of assault, battery, and intentional infliction of emotional distress when they, without cause or provocation, severely beat Plaintiff.
>
> . . . .

---

[1] The other defendants besides the Kings include: Macy Willis, Regan LaFauci, Tammie Maricle, Sandra Suydan, Jalynn Sumney, Danny Willis, Don King, and Kyle King.

8.

After this confrontation, Macy [one of the eight assailants] . . . falsely and baselessly stated to multiple people at the reception that Plaintiff was physically harming [his girlfriend]. Upon information and belief, Macy made these false statements to persuade individuals at the reception to assault Plaintiff. . . .

9.

Immediately after Macy made these false allegations, [the 8 assailants including the Kings] came outside and rushed toward Plaintiff to physically attack him. [The Assailants] tore Plaintiff's shirt from his body before he was finally able to extricate himself from the attack.

Once Plaintiff was returned to the King's residence by LaFauci, he alleged in his petition:

14.

All of the Assailants . . . then proceeded to beat Plaintiff. They struck, punched, kicked, and stomped Plaintiff – attacking him across his entire body – as he lay on the ground. The Assailants' attack broke Plaintiff's nose, fractured his jaw on both sides, fractured his right eye socket and broke his left eye socket. The Assailants' attack caused the cartilage in Plaintiff's sternum to shift and lacerated his back. Dusty [King] bit Plaintiff on the neck and arm, tearing skin and muscle. The Assailants struck Plaintiff repeatedly, and for an extended period of time.

. . . .

20.

The Assault was caused by the legal fault of the Defendants, including the following particulars:

A.	Battering Plaintiff by intentionally inflicting harmful and offensive physical contact upon [him] without his consent;

B.	Assaulting Plaintiff by intentionally placing him in reasonable apprehension of receiving a battery and corresponding injury.

25.

Upon information and belief, at the time of the Attack, there was in full force and effect a policy of homeowner's insurance issued by [Farm Bureau], providing insurance coverage to Dusty King which by [the] terms and conditions of the policy, [Farm Bureau] assumes liability for damages as sued for herein.

26.

Upon information and belief, Dusty King[2] negligently allowed and enabled the Assault to take place on his property by failing to prevent the foreseeable Assault, and this negligence caused the injuries to Plaintiff enumerated hereinabove.

Farm Bureau filed an answer to the petition, denying that the policy provided coverage and further denying that Perkins's injuries were caused by or arose from the negligence of Dusty or Kammie King. Instead, Farm Bureau stated that Perkins's injuries were "caused by and arose ou[t] of the intentional actions constituting an attack[,] beating, kicking, assault, biting, harassment and abuse of plaintiff by multiple assailants which included intentional attacks and assaults by Dusty King and Kammie King upon plaintiff." Farm Bureau denied coverage because there was no "occurrence' within the terms of the policy as there was no "accident," and policy exclusions precluded coverage because the acts were intentional.

In February 2022, Farm Bureau filed a motion for summary judgment alleging that there was no genuine issue that its policy did not provide coverage. Perkins conceded that the intentional acts by the Kings were not covered but argued that the Kings negligently allowed eight other individuals to foreseeably assault him. Following a hearing on the motion in April 2022, the trial court granted summary

---

[2] In an amended petition, paragraph 26 was amended to read "Dusty King and Kammie King" . . .

judgment in favor of Farm Bureau in a May 2022 judgment. Perkins now appeals

and assigns as error:

> The trial court erred in granting Farm Bureau's Motion for Summary Judgment and dismissing Mr. Perkins' claims against Farm bureau based on the negligence of the Insured Defendants.

## DISCUSSION

The law pertaining to summary judgment was discussed by the Louisiana Supreme Court in its per curiam opinion in *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (alteration in original):

> We review a district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.
>
> "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p.27 (La. 7/5/94), 639 So.2d 730, 751, (quoting *South Louisiana Bank v. Williams,* 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writs denied*, 596 So.2d 211 (La.1992) (alteration in original). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*
>
> Whether a fact is material is determined in light of the relevant substantive law. *Weingartner v. La. IceGators*, 02-1181 (La.App. 3 Cir. 4/17/03), 854 So.2d 898, *writ denied*, 03-1388 (La. 9/19/03), 853 So.2d 645.

*Thibodeaux v. Circle K Stores, Inc.,* 20-540, p. 2 (La.App. 3 Cir. 5/5/21), 318 So.3d

465, 467.

### *Insurance Policy Interpretation*

Whether an insurance contract provides coverage is generally a legal question

ripe for summary judgment procedure. *Motorola, Inc. v. Associated Indem. Corp.*,

02-716 (La.App. 1 Cir. 6/25/04), 878 So.2d 824, *writs denied*, 04-2314, 04-2323, 04-2326, 04-2327 (La. 11/19/04), 888 So.2d 207, 211, 212. However, summary judgment relating to coverage questions should not be granted "unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Id.* at 829.

An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts. *McQuirter v. Rotolo,* 11-188 (La.App. 1 Cir. 9/14/11), 77 So.3d 76. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

An insurer bears the burden of proving that an exclusion applies under the policy. *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London,* 616 So.2d 1250 (La.1993). Additionally, exclusionary clauses in insurance policies are strictly construed. *Calogero v. Safeway Ins. Co. of La.,* 99-1625 (La. 1/19/00), 753 So.2d 170. However, an insurance policy, including its exclusions, "should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Motorola,* 878 So.2d at 829.

Farm Bureau's policy provides liability coverage as follows:

## SECTION II- LIABILITY COVERAGES

## COVERAGE E- PERSONAL LIABILITY

IF a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1.   pay up to our limit of liability for the damages for which an **insured** is legally liable, except punitive and/or exemplary damages.

An occurrence is defined in the policy as:

7. **"occurrence"** means an accident, including exposure to conditions, which result in:

a. bodily injury; or
b. property damage

The policy then provides for exlucsions:

## SECTION II – EXCLUSIONS

. . . .

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury or property damages:**

a.  resulting from intentional acts or directions by you or any **insured**. The expected or unexpected results of these acts or directions are not covered.

The trial court granted summary judgment at the conclusion of the hearing and stated:

In the Court's opinion calling a[n] intentional act negligent enabling is too big a bait for the Court to swallow.  The Court finds that these damages were obviously from intentional beatings.  And by stating that they were as a result of some form of negligence is going further than the Court . . . will permit.  . . . [T]he Court finds that there is no genuine issue of material fact, even though there may be fifty versions of how the fight occurred, to me that is of no moment.  That is not material issues of fact that the Court would consider that would prevent such a motion for summary judgment.

We agree with the trial court and affirm its grant of summary judgment in favor of

Farm Bureau.

*Liability*

Citing several cases from the 1980s and *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762, Perkins first argues that social hosts can be liable for negligence for failing to prevent the intentional torts of third parties. In *Posecai*, the plaintiff was robbed at gunpoint in the parking lot of a Sam's store. Plaintiff argued that Sam's should have provided a security detail outside of the store because a neighboring area was known to be a high-crime area. The trial court found the robbery was foreseeable and could have been prevented if a security detail had been provided by Sam's in the parking lot. The Supreme Court undertook a duty-risk analysis to determine whether Sam's owed a duty to plaintiff and set forth that a business does have a duty to protect patrons from *foreseeable* criminal acts of third parties. The supreme court noted, however, that there generally is no duty to protect patrons from criminal acts of third parties. The supreme court concluded that a balancing test was the best method to determine the duty owed by a business and requires a case-by-case analysis of the facts stating: "The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty." *Id.* at 768. The court found that Sam's owed no duty to plaintiff to provide security because the crime was not foreseeable.

Employing this method, we find there is no genuine issue of material fact that this crime was not reasonably foreseeable from a duty-risk standpoint. Is it reasonably foreseeable that a gang of ten adults at a wedding reception will administer a severe beating to a man who has managed to escape after being chased but is unknowingly brought back to the reception by the homeowner's sister and removed from the vehicle by the homeowner wife who begins hitting plaintiff with eight other individuals thereafter joining in? We think not. More succinctly, the *Posecai* rationale does not apply to situations in which the insureds participate in the

criminal activity. The *Posecai* rationale involves repetitive criminal activity at a place of business, not the very particular circumstances presented in this case.

Moreover, the analysis of whether a homeowner is negligent under these circumstances must focus on the social policy that would be advanced by finding that homeowners who admittedly intentionally engaged in an assault with a large group of others owed a duty to prevent their co-conspirators from engaging in the assault. This result defies logic because of the criminal actions of the party to whom a duty is assessed. Purely from a social policy standpoint, the intentional criminal acts of the homeowners and their cohorts necessarily eliminate any duty that can be based in negligence. Otherwise, a homeowner would have an incentive to have others commit crimes against third-parties on their properties in order to avoid the intentional act exclusion present in every liability policy written. This reasoning is further supported by the holding in *Hewitt v. Allstate Ins. Co.*, 98-221 (La.App. 4 Cir. 1/27/99), 726 So.2d 1120. In *Hewitt*, a negligent supervision claim was excluded (the minor who was negligently supervised was, however, an "insured" under the policy), because "[t]he focus of the policy exclusion is on the cause of the damages, not the cause of action alleged. All *damages* caused by intentional acts are excluded, regardless of the classification of the cause of action against the individual defendants." *Id.* at 1124-25. A party cannot circumvent the intentional act exclusion by rephrasing the intentional acts as negligence. *Id.*

The other cases cited by Perkins are similarly inapplicable to these unusual circumstances and only stand for the proposition that a homeowner could, theoretically, be liable for the intentional act of a third-party to its guest. In *Broussard v. Peltier*, 499 So.2d 1026 (La.App. 3 Cir. 1986), the homeowner sister of the plaintiff owed no duty to the plaintiff to prevent the third-party ex-boyfriend from assaulting her while the homeowner was asleep. Notably, the homeowner did

not participate in the assault. In *Blackledge v. Font*, 06-1092 (La.App. 1 Cir. 3/23/07), 960 So.2d 99, the Fonts hosted an end-of-the-school-year party for their son. A guest at the party was playing a competitive game of basketball and punched the plaintiff in the face. The parents owed no duty to the plaintiff because the guest's actions were unforeseeable. Again, the insured homeowners did not participate in the assault. In *Clement v. Armoniet*, 527 So.2d 1004 (La.App. 5th Cir.), *writ denied*, 531 So.2d 475 (La.1988), the homeowner parents were away, and their eighteen-year-old son threw a party at which alcohol was served to minors. The son broke up a fight and, thereafter, went upstairs; however, other subsequent fights broke out between the teenagers, and the defendant guest karate-kicked plaintiff, injuring him. The insured son was assessed 50% fault essentially for failing to end the party after the first fight and for serving alcohol to minors. The apportionment of fault was affirmed by the appellate court. Notably, the insured son was not involved in any of the fights.

Perkins alleges there are genuine issues of fact whether the homeowners knew their guests would assault Perkins when he was returned by LaFauci; in other words, that it was foreseeable by the Kings. For the reasons already noted, we find this to be irrelevant when the insureds were active participants in an intentional assault. Perkins further claims there are seven disputed material facts.[3] For the reasons noted

---

[3] Perkins claims the following facts are material: Farm Bureau's Material Fact: 1) Plaintiff did not receive any 'accidental' injuries on the subject evening of 10/20/2019 at the King residence such that whatever injuries he did receive arose out of the assault/altercation/attack/abuse/physical molestation which was not an accident and which was intentional such that there is no coverage for the injuries arising out of those actions.
1) Mr. Perkins was assaulted twice, at two separate times, on October 19-20, 2019. 2) Eight guests on the Insured Defendant's property participated in the Assaults against Mr. Perkins. 3) Multiple guests of the Insured Defendant assaulted and chased Mr. Perkins away from the Property during the First Assault. 4) Between the First Assault and the Second Assault, the Insured Defendants negligently took insufficient action to prevent the Second Assault. 5) The Insured Defendants failed to sufficiently monitor or limit the consumption of alcohol by guests on their property. 6) The Insured Defendants did not instigate, cause, or direct the other guests' intentional torts in either the First Assault or the Second Assault.

by the trial court, none of these "facts" bear relevance when there is no dispute that the homeowners and their guests intentionally assaulted the victim in concert with each other. Which guest threw which punch, kick, bite, or stomp is immaterial. Whether it was seven or eight guests, whether Kammie "started it" when she drug Perkins out of the car or someone else did is also irrelevant.

While this analysis is more properly addressed in the policy exclusions analysis, we address it here to be certain that a negligent "enabling" claim will not survive when all of the parties, including the insureds have intentionally committed criminal acts. The only "enabling" occurring in this case was the *intentional* enabling of the homeowners who, with a group of their guests, assaulted Perkins. Furthermore, as discussed below, this policy would provide no coverage as this was not an "occurrence" under the policy terms of this particular insurance contract.

*Occurrence*

Perkins argues that intentional assaults are accidents because whether an incident constitutes an accident is based on whether the event was expected "from the perspective of the victim." We disagree. Perkins cites a portion of a Louisiana Civil Law Treatise relating to Commercial General Liability Polices (CGL) for this proposition:

> The courts have held that whether a claim results from an "accident" will be determined from the viewpoint of the victim. If the injury was unforeseen and unexpected by the victim, then his injury results from an accident.

15 La.Civ.Law Treatise, Insurance Law & Practice §6:7 (William Shelby McKenzie and H. Alston Johnson, III).

In a footnote, the cases Perkins relies on in brief and discussed below are mentioned. However, the rest of the section goes on to describe instances where the

courts have deemed an occurrence an "accident" from the victim's viewpoint under

a CGL policy (emphasis added):

> Intentional Injury. The comprehensive general liability policy precluded coverage for intentional injuries by excluding such injuries from the definition of "occurrence." The definition of an "occurrence" includes only "bodily injury or property damage neither expected nor intended from the standpoint of the insured." Rather than placing the intentional injury exclusion in the definition of occurrence, the 1986 Commercial General Liability Policy uses an express exclusion. *Exclusions for intentional injury are discussed generally in § 5:5, supra, which should be reviewed in conjunction with this section. This section will deal only with particular applications of the intentional injury exclusion in commercial liability policies.*

> The jurisprudence, and particularly the leading cases of *Rivers v. Brown* [168 So.2d 400 (La.App. 3 Cir. 1964)]and *Baltzar v. Williams* [254 So.2d 470 (La.App. 3 Cir. 1971)], establish the proposition that an intentional injury inflicted by an employee does not preclude coverage for the vicarious liability of the employer. An exclusion for injury expected or intended by the insured *must be read from the viewpoint of the insured claiming coverage, the employer*. Both *Rivers* and *Baltzar* involved assaults committed by corporate employees in the course of their employment. Their intentional acts were held not to be the intentional act of the corporation, even though the employee in *Rivers* was the president and principal shareholder of the corporation.

> Cases have found the exclusion applicable to misconduct of corporate insureds. The insured in *Thibodeaux v. Western World Ins. Co.* was a lumber company held liable for an intentional trespass in deliberately going on adjoining land and harvesting timber without permission. The court held that coverage for such willful act was excluded under the definition of "occurrence" in the lumber company's CGL policy. The court did not discuss who authorized the trespass or how the decision was made, but the court's opinion *clearly implied a management decision to engage knowingly in such unauthorized activity*. Also, the court did not discuss the vicarious liability cases such as *Rivers* and *Baltzar*.

> These issues were specifically dealt with in *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, a federal Fifth Circuit opinion which adopted the findings of fact and conclusions of law of the district court. That court found that a company which had contracted to dispose of a hazardous waste resembling crude oil knowingly introduced this waste into Ashland's pipeline, which resulted in corrosive damage to Ashland's refinery. The court found that the insured's management was aware of the plan to dispose of the hazardous waste and of its corrosive properties, and therefore the resulting property damage was expected or intended by the corporate insured. The court distinguished *Rivers* and *Baltzar* as involving the unauthorized, reflexive intentional acts of

11

individual employees.  Instead, the *Ashland* case involved a pre-concerted plan carried out by the management of the corporate insured. Both *Thibodeaux* and *Ashland* are appropriate applications of the intentional injury exclusion to corporate activities. *Coverage for injuries resulting from a management decision to engage knowingly in a business activity which will inflict such injury should be excluded.*

*Id.*

Section 5:5 under the "Personal Liability Coverage" section is titled "Exclusion of intentional injury and related exclusions" and states:

> Liability policies generally exclude coverage for bodily injury and property damage which are intentionally inflicted. Such an exception to coverage may appear as a specific exclusion. For example, many earlier homeowners policies provided that the policy does not apply "to bodily injury or property damage which is either expected or intended from the standpoint of the insured." Other policies, written on an occurrence basis, excluded intentional conduct in the definition of an "occurrence," which is defined to mean "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Most insurers have revised their intentional injury exclusions to restrict coverage in light of judicial interpretations of earlier policy provisions. Also, insurers have added additional exclusions specifically directed at certain conduct. For example, the ISO homeowners form in Appendix D, infra, contains express exclusions for liability arising out of communicable diseases, sexual molestation, corporal punishment, physical or mental abuse and controlled substances. Other policies contain an additional exclusion for "willful and malicious acts." Since the majority of "intentional injury" cases have arisen under homeowners policies, this coverage issue will be treated here, although cases involving similar exclusions in automobile and general liability policies also are discussed. Also, this section will cover the related "assault and battery" exclusion included in some commercial policies.

> Specific issues under automobile and CGL intentional injury exclusions are discussed in §§ 3:37 and 6:7, respectively.

*Id*.

The Farm Bureau policy language does not include the "neither expected nor intended from the standpoint of the insured" language.  Most importantly, the circumstances of the above cases could not be more distinct than those here where the policyholder homeowner participated in the assault.  Nothing in the present case could be deemed accidental, neither from the assailants' perspectives nor the

victim's perspective. Perkins knew the gang of wedding guests were a threat to him since he attempted to flee from them not once, but twice. If every brutal, intentional assault was deemed an "accident," the intentional act exclusion would be rendered meaningless. This is not a CGL policy where, in some circumstances, for example, an employer's insurance policy *may* provide coverage for an intentional act of an employee. The cases cited by Perkins are not applicable. Furthermore, the reasoning set forth by McKenzie and Johnson is applicable here: When the corporate management/homeowners knowingly engage in the intentional activity that will inflict injury, coverage should be excluded.

In *West v. City of Ville Platte*, 237 So.2d 730, 732 (La.App. 3 Cir. 1970), the policy excluded "accidents arising out of an assault or alleged assault." The plaintiff in *West* had a variety of claims including wrongful arrest and failure to render medical aid that would properly be based in negligence. This language and the facts are inapplicable to the case at hand. In another case cited by Perkins, *Redden v. Doe*, 357 So.2d 632 (La.App. 1 Cir. 1978), the plaintiff was forced off the road and ended up in the bayou where she received injuries when the would-be robbers dragged her out of her upside-down vehicle. The policy *did not exclude intentional acts* and the opinion noted that "we are here concerned with the obligations and responsibilities of an insurance company *to its own policyholder* as distinguished from the insurer's liability under an ordinary liability policy." *Id.* at 633 (emphasis added). We find these facts inapplicable to the ones at bar.

Finally, Perkins cites *Tsolainos v. Tsolainos*, 59 F.Supp.2d 592 (E.D.La. 1999). In *Tsolainos*, the defendant/ex-husband killed his ex-wife when he ran over her. Although he was arrested and charged with murder, the court found that the ex-husband's intent was a contested genuine issue of material fact precluding summary judgment. The court did find that the ex-husband's intent "does not determine

13

whether there was an accident under Louisiana law," citing the 1959 case of *Jernigan v. Allstate Ins. Co*., 269 F.2d 353, 356 (5th Cir. 1959). *Id*. at 596. We note that the *Tsolainos* court noted in a footnote that, "If Tsolainos pleads guilty to or is convicted of killing the decedent, or if other sufficient evidence of Tsolainos's intent is adduced, the matter may then be ripe for summary judgment." *Id.* at 595 n. 3. We find this case distinguishable from the one at hand. There is no genuine issue that the homeowners and other assailants intended to assault Perkins.

Additionally, reasonable people could not conclude that this beating was an "accident" from Perkins' perspective. "Accident" is a common word that need not be defined because its meaning is widely understood as something that is unforeseen and not intended. Dictionary.com defines accident as "an undesirable or unfortunate happening that occurs unintentionally and usually results in harm, injury, damage, or loss; casualty; mishap[.]" www.dictionary.com/browse/accident (Last visited February 3, 2023). It is commonly understood that an accident is "[a]n unforeseeable and unexpected turn of events that causes loss in value, injury, and increased liabilities. The event is not deliberately caused and is not inevitable." www.thelawdictionary.org/accident. (Last visited February 3, 2023). Moreover, intentional is an antonym for accidental. See www.thesaurus.com/browse/accidental (Last visited February 3, 2023). Using the ordinary meaning attributed to the term "accident," as required by Louisiana law in interpreting words of an insurance contract and given the undisputed facts that the homeowners and their guests intentionally assaulted Perkins, and that Perkins was acutely aware of the impending danger, this is not an "occurrence" under the terms of this policy. Moreover, even assuming arguendo that this was an "accident" under Louisiana law, the intentional act exclusion would exclude coverage under this insurance policy as discussed below.

14

*Exclusions*

Here, Perkins concedes that the exclusion prohibits coverage of the Kings' intentional beating of Perkins but argues that the Farm Bureau policy does not exclude coverage for the Kings' negligence, "even if the negligence relates to the foreseeable intentional acts of third parties" because the policy language is very specific in excluding coverage for intentional torts "by you or any insured." Although this issue is rendered moot by our above finding that there was no occurrence, for the sake of argument, even assuming there was a covered "accident" this exclusion would pretermit coverage. Based on the duty/risk analysis above, there is no negligence in this case, only intentional acts and intentional enabling by the homeowners and their guests. Perkins argues that "Louisiana case law supports the proposition that an intentional acts exclusion does <u>not</u> exclude coverage when the insured party was not the person who performed the intentional act," citing several cases like the ones above involving employers and employees, where the insured did not commit any intentional act, but ignoring the obvious conclusion that the insureds here did, in fact, engage in the intentional act along with their guests.[4]

**CONCLUSION**

There is no genuine issue of fact that the injuries suffered by Perkins were intentionally caused by the insureds and their guests. To claim that the Kings, who were admittedly active participants in the intentional beating, "negligently enabled" eight other adults to participate exceeds the limits of common sense and is contrary

---

[4] Perkins cites *Nizzo v. Wallace*, 08-525 (La.App. 5 Cir. 11/25/08), 2 So.3d 441, *writ denied*, 08-2990 (La. 2/13/09), 999 So.2d 1150 (employee sued employer for intentional tort of employee for vicarious liability and negligent selection and training of employees); *Jones v. Doe*, 95-1295 (La.App. 3 Cir. 4/24/96), 673 So.2d 1163 (school sued for intentional tort of a student); *Leon Lowe & Sons, Inc. v. Great Am. Surplus Lines Ins. Co.*, 572 So.2d 206 (La.App. 1 Cir. 1990) (employer is "insured," not "employee" in vicarious liability matter for intentional tort); *White v. LeGendre*, 359 So.2d 652 (La.App. 1 Cir. 1978) (referencing the illegitimate child's mother as responsible for the torts of the minor child).

to the ordinary meaning of accident. Moreover, for the Kings' policy to provide coverage in this instance would be contrary to public policy because it would promote the purchase of insurance policies with the intent of having others commit intentional acts on one's behalf. Simply, there was nothing negligent about any of the actions taken by any of the assailants in this matter, and having conducted a de novo review of the record, we find no error in the trial court's grant of summary judgment in favor of Farm Bureau. All costs of this appeal are assessed against the Plaintiff-Appellant, Christian Blaine Perkins.

**AFFIRMED**.